## BOOM *vs.* THE CITY OF UTICA.

References under the act of 1845, though of actions of tort, and to a sole referee, were intended by the legislature to be placed, in all respects, upon the same footing as cases which were formerly referable under the old statute. And the supreme court has the power to review the report of the referee in such a case, and to set it aside if erroneous.

The officers of a municipal corporation are the mere agents of the corporation; and if they transcend the boundaries of their duties, as prescribed by the charter, the corporation is no more bound by their acts than any individual is bound by the unauthorized act of his agent.

This principle applies to cases arising upon a breach of contract, as well as to those which are founded upon a wrong.

A municipal corporation is liable for a tortious act, as a trespass, committed by an agent pursuant to its directions, in relation to matters within the scope of the objects of its incorporation; but not for any unauthorized acts of its officers, though done *colore officii.*

Under the provision in the charter of the city of Utica, authorizing the common council to make and publish ordinances, by-laws, &c. for the purpose of abating and removing *nuisances,* they have no power to direct the removal of a person sick of an infectious or contagious disease from one place to another, without his consent.

A person sick of an infectious or contagious disease, in his own house, or in suitable apartments at a public hotel or boarding house, is not a *nuisance.*

There is nothing in the act incorporating the city of Utica conferring on the common council any of the powers of a board of health. Nor is there any other act now in force creating any such board, or vesting any such authority in the common council of that city.

The common council of the city of Utica has no power to order the forcible seizure of a person's house, and its occupation as a pest-house, without his consent and against his will.

A municipal corporation cannot be made liable for an act of its agent, by a ratification thereof, where the act complained of was of such a nature that the corporation did not possess the power to authorize the doing of it by the agent.

MOTION by the defendants to set aside the report of a sole referee. The action was trespass on the case, brought by the plaintiff, against the defendants for placing, or causing to be placed, certain persons having the small pox in a house in the plaintiff's possession, without his consent, and against his will. The facts, as they appeared in evidence before the referee, are

fully stated in the opinion of the court. The referee made a report in favor of the plaintiff for $75.

*T. H. Flandrau & O. G. Kellogg*, for the defendants.

*T. E. Clarke & E. J. Richardson*, for the plaintiff.

*By the Court*, GRIDLEY, J. A preliminary objection is raised in this cause to the right to review the decision of the referee; upon the ground that the case was not referable under the statute. Prior to the act of 1845, this would doubtless have been a good objection. (*See* 19 *Wend.* 108; 5 *Id.* 535.) But by that act, (*Sess. L. of* 1845, *p.* 163,) it is provided that actions of tort may be referred, by consent of the parties, and that such reference shall be subject to the provisions contained in the revised statutes, on the subject of referring actions at law. We are of the opinion that a reference under the act of 1845, though of an action of tort, and to a sole referee, was intended by the legislature to be placed, in all respects, upon the same footing as cases which were formerly referable under the old statute; and therefore that there is no legal objection to reviewing the report of the referee in this case, and setting it aside if it be erroneous.

The plaintiff was the occupant of the premises in question in this suit, under a lease executed by the city to him, bearing date the first day of April, 1840, at an annual rent of $10. Upon the premises stood an old house, which was, without the consent of the plaintiff, taken possession of by Harry Bushnell, then an alderman of the city, by placing therein one Richard Evans and his family, two members of which were sick of the small pox. Evans was an immigrant from North Wales, who had recently arrived in the city with his family, and while he was staying on a visit at the house of one Davis, two of his children were taken sick. Soon after the happening of this calamity, he took rooms at the United States Hotel, where he had been staying a day or two when he was removed to the house in question by Bushnell, who claimed to act in behalf of a com-

Boom *v.* The City of Utica.

mittee of the common council of the city of Utica. The only evidence, however, of any authority to act in the premises, was furnished by George Tracy, who testified that he and Bushnell were aldermen of the city of Utica, in the year 1840. That it was mentioned in a meeting of the common council in the month of May, in that year, that certain persons in the second ward were sick of the small pox; whereupon Bushnell and himself and others, whose names he did not remember, were appointed a committee " to *procure a place and remove the family to it.*" There was no written resolution on the subject, nor any memorandum of any such action of the board, in the minutes. The reason assigned by the witness for the omission to enter the resolution and the appointment of the committee, in the minutes was, the fear that it would create an alarm in the country.

The removal of the family occurred upon a stormy day, in the month of April, and one of the children who were sick, according to the testimony of the attending physician, died within a few days, from the exposure it suffered during the removal. The expenses of fitting up the house, medical attendance, &c. were paid out of the city funds; but there was no evidence that this payment was in pursuance of any resolution of the board, or that the officer who furnished the funds had any knowledge of the circumstances attending the removal, or of the unlawful seizure and occupation of the plaintiff's house. It was under these circumstances, and for this act of Alderman Bushnell, that the plaintiff sought redress by an action upon the case against the city. The house when thus taken possession of was not in the actual occupation of the plaintiff, and was not in tenantable condition till repaired; but the family continued to remain in the house for a few weeks after the death of the child; and some evidence was given to show that the plaintiff was prevented from a full enjoyment of the lot for the purposes of pasturage and cultivation, by the fact that it was deemed dangerous to approach the house in which a patient was sick of a contagious disease. The referee, upon the evidence before him, reported for the plaintiff the sum of

Boom *v.* The City of Utica.

**$75.** We cannot but think this a somewhat extravagant estimate of damages, sustained by a loss of the temporary occupation of premises, the yearly rent of which was fixed by the parties themselves, in the lease, at $10 only.

A more important question, however, arising upon this report is, whether the plaintiff is entitled to recover *at all.* Had the action been brought against the individual who committed the trespass, or who directed it to be committed, there could be no doubt of the right to recover an ample compensation for this unauthorized appropriation of the property of another. But the plaintiff has sought his remedy *against the city ;* and the question presented for our consideration is one of great interest to those who live under the government of municipal corporation, and who are liable to contribute to the public burdens created by their acts. It is doubtless expedient that the officers of such corporations should possess a liberal grant of powers, to enable them to make ample provision for the public welfare, and to discharge with advantage to their constituents the duties incident to their trust. It is equally important, also, that the nature and extent of those powers should be clearly defined and well understood by themselves and the public ; and they should be careful neither to exceed nor abuse them, by the adoption of measures beyond the scope of the authority conferred upon them. It is declared by the second section of the act of incorporation, that " the *inhabitants* of said city shall be a corporation, by the name of the City of Utica." By virtue of other sections the *inhabitants* thus constituting the corporation elect various officers, who are charged by the same act with definite powers and duties. The mayor and aldermen, when chosen by the electors, constitute the common council of the city ; and this body is invested with much the most numerous and important class of powers granted by the act. Nevertheless, these officers are the mere agents of the corporation, and their powers and duties are specified in the charter, with great clearness and precision ; and when these agents of the corporation transcend the boundaries prescribed for them by the statute, the city is no more bound by their acts than any indi-

vidual is bound by the unauthorized acts of his agent. This principle applies to cases arising upon a breach of contract, as well as those which are founded upon a wrong. The case of *Hodges* v. *The City of Buffalo*, (2 *Denio*, 110,) illustrates this doctrine as applicable to the former class of cases. In that case the city was sued for the expense incurred upon a contract with the keeper of a hotel, made by a committee authorized by a resolution of the common council, " to co-operate with the citizens generally, for making proper arrangements for celebrating the anniversary of our independence." And the supreme court held that the common council had assumed the exercise of powers not conferred by the charter, and therefore that the city was not liable upon this contract of its agents. With respect to actions against a corporation sounding in tort, it is laid down that the corporation is liable for a tortious act, as a trespass, committed by an agent pursuant to its directions, *in relation to matters within the scope of the objects of its incorporation ;* but not for any unauthorized acts of its officers, though done *colore officii.* (*See Angell & Ames on Corporations*, 250, 330.) The revised statutes, (1 *R. S.* 599, § 1,) declare the general powers incident to every corporation ; and in the third section it is enacted that with the exceptions of those general powers and such as are expressly given in its charter, " No corporation shall possess or exercise any corporate powers except such as are necessary to the exercise of the powers so enumerated and given."

The question therefore arises whether a power to do the act which is the occasion of this suit, is conferred by the act incorporating the city of Utica.

The only powers granted by the act of incorporation, which can with any plausibility be regarded as embracing a right to do the act in question, are those conferred by the 14th subdivision of the 38th section. By that section the common council are clothed with powers " to make, establish, publish and modify, amend and repeal ordinances, rules, regulations and by-laws" for the following purposes, enumerating twenty-two in all ;

and the 14th being stated in the following words: " *To abate
and remove nuisances.*"

We think that the provision in question furnishes no au-
thority or justification for doing the act complained of; for
several decisive reasons.  (1.) The power conferred upon the
common council is merely *legislative,* to " *make and publish
ordinances,*" &c. for the purpose of abating and removing nui-
sances.  It is a mere grant of authority to adopt general rules
and regulations respecting the removal of nuisances; by desig-
nating what officers shall be charged with the duty; the mode of
procedure, with all other details necessary to carry out the object
of the enactment.  Such is the clear and obvious interpretation of
the provision in question.  (2.) We cannot admit that a person
sick of an infectious or contagious disease, in his own house,
or in suitable apartments at a public hotel or boarding house,
is a *nuisance.*  It has indeed been held in a case reported in
4 *Maule & Selw.* 73, that an indictment for nuisance would
lie against a person " for knowingly, unlawfully and injuriously
conveying a child sick of the small pox through the public street;"
thus exposing passengers to take the infection.  That was,
however, a very different case from the one now under consid-
eration.  Every public nuisance is indictable.  (4 *Black. Com.*
166.)  But I apprehend that it will not be pretended that an
indictment would have lain in this case against the children,
or their father, or the proprietor of the hotel in which they were
sick.  Such a doctrine would punish as criminals the unfortu-
nate victims of disease, and would be abhorrent to every prin-
ciple of justice and humanity.

We do not mean, however, to deny the largest powers, and
the most liberal discretion, to boards of health duly and legally
constituted, to preserve the public health and prevent the
spreading of a contagious disease by the severest quarantine
and hospital regulations.  But that question does not arise
here.  There is nothing in the act of incorporation conferring
on the common council any of the powers of a board of health.
Nor is there any other act now in force creating any such
board, or vesting any such authority in the common council of

Boom *v*. The City of Utica.

the city of Utica. The original act passed June 22d, 1832, upon the appearance of the Asiatic cholera in this country, and incorporated into the second edition of the revised statutes, (1 *R. S.* 444,) expired by its own limitation, and was afterwards renewed from year to year for several successive years. Since which time it has not been, and is not now, in force.

The right here contended for must therefore be supported, if at all, by an authority independent of àny regulation authorized by a board of health. In other words, the removal must be justified on the ground that the sick children, lying in their beds at the hotel, were a nuisance, and their removal authorized by the 38th section of the charter. To this proposition we cannot assent. Indeed the removal was a most imprudent and unjustifiable act, creating the very danger sought to be avoided, and the author of it was perhaps indictable under the decision cited from *Maule & Selwyn ;* and, if the physician is to be believed, in its consequences resulting in the death of one of the unfortunate patients. (3.) But the act for which this suit is brought, is not merely the removal of persons sick of an infectious disease. And though we concede that the common council had a right to order such removal, it by no means follows that they possessed the power to order a *forcible seizure and occupation of the plaintiff's house.* It was true that he was not in the *actual occupation* of the house at the time ; but he had the *legal possession* of it under a valid lease. And the act of taking possession of that empty tenement was just as clear and palpable an invasion of the plaintiff's rights, as though he and his family had been forcibly ejected to make room for Evans and his family. In truth, if the exercise of such a power can be justified, then no man's house is safe from the intrusions of patients reeking with contagion, whenever the common council shall see fit to occupy it for such a purpose. Such a power can never be assumed or exercised, where the law forms any protection for the rights of the citizens ; nor under any government less absolute than a naked despotism. But (4.) To the credit of the common council of the city there is no evidence that they ever assumed to exercise this power. They

only authorized their committee to *procure a suitable place and remove the sick persons to it.* This means, upon every fair intendment, to procure a place by lawful means, by contract, or by the consent of the owner. The board never intended that the committee should commit a trespass, in procuring a place for this unfortunate family. It is insisted, however, that upon the authority of what is said in *Thayer* v. *Boston,* (19 *Pick.* 511,) the common council affirmed and ratified the acts of this committee, by defraying the expense of repairs and of medical attendance and provisions furnished to the family. To this argument there are two answers. (1.) There is no evidence that the common council, by any resolution or legal action, ever authorized the payment of these particular expenses. Much less that they did so with a full knowledge of the unlawful trespasses which had been committed upon the rights of the plaintiff; and if they did, it would not necessarily follow that they intended to adopt the trespass as their own. (2.) We would say as the court said in reply to a similar argument in *Hodges* v. *Buffalo,* (2 *Denio,* 113.) " It cannot be maintained that a corporation can, by a subsequent ratification, make good an act of its agent, which it could not have directly empowered him to do." This very case cited from Pickering is a direct authority for holding, that the city is not liable, unless the common council had the power to authorize the doing of the act complained of.

The view already taken of this case we regard as entirely conclusive, and upon the clearest ground of law. And it may be summed up in few words. The city cannot be made liable for this unlawful occupation of the plaintiffs' house by Alderman Bushnell, because 1st. The common council had no power to authorize such an act. And 2dly. They never did authorize it. This leaves the plaintiff to his remedy against those who, without authority, were the actors and directors in the commission of the trespass.

We have, however, been met by an argument *ab inconvenienti;* to the effect, that, unless this power is possessed by the common council, there can be no protection of the public

Boom v. The City of Utica.

health against the ravages of a contagious disease. We answer to this argument, (1.) That granting the truth of the proposition, it is a good reason for asking the legislature to confer the power upon the common council; but none for its unauthorized and illegal exercise. (2.) We cannot agree that it is *necessary* or *expedient* to confer a power upon any body of men to seize the property of another, and appropriate it, without his consent, to such a purpose as this. Proper places for hospitals have always been obtained and always may be, without the commission of a trespass. (3.) There is already an ample provision made for the exigency of a case precisely like this. By the 22d section of the general act for preserving the public health (1 *R. S.* 444,) it is provided, that " Any two justices of the peace in any town of this state, may cause all persons who shall be sick of any infectious or pestilential disease, and not being residents of such town, by an order in writing, to be removed to such place of safety within the town as they shall deem necessary for the preservation of the public health." The 24th section of the charter of Utica clothes justices of the peace in the city with all the powers possessed by the like officers in the several towns of the state. And the 64th section declares that the city shall be considered as a town for all purposes not otherwise provided for in the act of incorporation.

We have thus assigned, at some length, the reasons which have brought us to the conclusion, that the referee in this case erred; on account of the importance which we attach to a more general and accurate knowledge of the legal limitations of the powers ordinarily exercised by the boards of municipal corporations.

Report set aside.