## SUPREME COURT.

### PHŒBE VAN WERT agt. THE CITY OF BROOKLYN.

### LAVINA TOWNSEND agt. THE SAME.

A *municipal corporation* is not liable for *negligence* in the construction of a public work, although such work was done under a contract duly executed by its proper authorities—and

Unless it affirmatively appears that an owner of real estate in making a contract for the improvement of his property by the erection of new buildings or the alteration of those already erected, has required some improper act to be done, or has omitted some ordinary or proper precaution, he cannot be charged with improper conduct or negligence, and is not liable for the consequences of negligence in the prosecution of the work.

A municipal corporation is not liable for the consequences of negligent acts of firemen, or workmen employed by them to erect buildings on property of the city occupied by an engine company. Neither the fire company nor the builders are the agents or employees of the city for such purpose, nor is the city liable for their acts.

*Brooklyn General Term, February*, 1865.

*Before* BARNARD, SCRUGHAM *and* LOTT, *Justices.*

THE above cases were both founded on the same circumstances, which were as follows : In November, 1863, Fire Engine Company No. 17, W. D., city of Brooklyn, built an additional story on their engine house. The work was done under contract made by the company with Snediker & Patton, builders, who sub-let the same to one Kenny. One side wall and the rear wall of the building were run up, the roof resting on them only ; the other side wall was built up to within about a foot of the roof, the front wall was not raised at all. The building remained in this insecure condition for some time, the unfinished walls unbraced. While in this condition on the occasion of a violent storm, one of the side walls fell or was blown down upon an adjoining building owned and occupied by plaintiffs, severely injuring the same, for which damage this action was brought against the defendant, the owner of. the engine property.

The actions were tried before J. H. Calahan, justice of the peace, Brooklyn, who gave judgment for plaintiffs, which judgment was affirmed by the Kings county court, when the following opinion was given :

DIKEMAN, County Judge. By the return of the justice, it appears that by agreement of counsel, the testimony taken in the first above entitled action should be deemed as taken in, and apply to the second. The pleadings before the justice were informal, but it appears by the return and admissions of counsel on the argument, that Phœbe Van Wert is the owner, and Lavina Townsend the tenant and occupant, of a house fronting on Jay street, in the city of Brooklyn, and that adjoining said house the defendants own a lot, on which they some six or seven years since, erected an engine house, which has ever since been used and occupied by a fire company of said city—a fire engine being kept therein, all in charge of a fire company ; that some time in 1863, the defendants on the petition of the fire company, authorized some internal alteration and repair to be made on the engine house, but did not authorize any elevation of the building, or of its roof or wall, nor were they requested-to have any such elevation made ; that in the latter part of August, 1863, the fire company made a contract with certain builders to raise the roof and build up walls twelve or fifteen feet high on the top of the original walls, adding one story to the building, and paid the contractors for the same by subscription of the company, $1,750 ; that said contractors under this agreement with the fire company, raised the roof and carried up the wall of the engine house, adjoining the house of the plaintiff, to within about two feet of the height to which the roof had been raised, and the other side and wall up to the roof; that while in this situation, an unusual strong wind blew down the wall adjoining the plaintiff's building, and it fell upon the plaintiff's house, by which I am satisfied both of the plaintiffs were injured, each to the amounts respect-

ively, for which the justice gave judgments in their favor against the defendants.

There is some evidence to show that this wall before it fell, had been braced for the purpose of preventing its falling; but it fails to satisfy me that all reasonable care was taken, and all reasonable means used to prevent the injury which the plaintiffs have sustained; and if under the facts above stated, the defendants are legally liable for the negligence or unauthorized acts of the fire company and the contractors who raised said wall, the judgments of the justice must be affirmed, otherwise they must be reversed. In the case *The Mayor, &c., of Albany, plaintiff in error* agt. *Simon Cunliff, defendant,* in the court of appeals (2 *Comst.* 165), in which the defendant had sued the plaintiffs in the supreme court, for injuries sustained by the falling of a bridge, which it was alleged had been negligently constructed by the plaintiffs, it was held that the plaintiffs were not liable ; CADY, J., saying that it appears that the bridge had been erected under a void act of the legislature, and that to render them liable it should be shown that they were lawfully required or authorized to make the bridge. BRONSON, J., says : Though the work was done by the plaintiffs, the bridge was built for the pier owners, and that they only were under obligation to keep it in repair, and that there was no color of authority for an action against the plaintiffs ; that the city were no more than builders for pier owners, and if they did not build with proper care and skill, they may be answerable to the owners of the bridge, but not to third persons; their remedy is against the owners of the bridge, who are bound to repair; that if the injury had happened while the plaintiffs were constructing the bridge, and through any want of care and skill on their part, the city might have been answerable, but the bridge had been completed and in charge of pier owners more than three years before it fell and injured the defendant; that the builder is only answer-

able to those for whom he builds for injuries accruing after his work is done, and the owner in possession; but the owner, upon whom the duty of maintaining the structure rests, is answerable to third parties for the sufficiency of the work, whether he has been injured by the builder or not; and assuming that the act under which this, work was done by the plaintiffs was valid, there is no foundation for the action. Strong, J., concurs in the opinion that the corporation could not in that case be made liable to third persons.

The injury to the plaintiffs in these actions accrued while the work was being performed, and the engine house in the actual possession of the defendants, under the care and custody of the fire company. Under the testimony, neither the fire company nor the builders who erected the wall, can be considered as the agents or employees of the defendants in building it, and therefore, the defendants cannot be held liable as for injury resulting from the carelessness of workmen employed by them in the performance of work which they were required or authorized to do or have done. But I apprehend the defendants are liable to these plaintiffs upon an entirely different and well settled principle of law, and that is that all owners of real property, and especially where the property is actually improved and occupied by the owner, is bound so to use it as not to injure the property of other persons; and that any improper or careless use of it, whether by the owner personally, or by a person or persons by him put in charge of it, creating a liability to produce injury to others without their fault, will, when the injury actually occurs, render the owner liable to the party injured for damages resulting therefrom. Nor can the owner of property so improperly used, escape such liability, though it appears that the act complained of was done by a person he had put in charge of the property for care and safe keeping; this liability cannot be shifted from the owner to the person he has thus

employed; the possession and control of the property by such person must in such case be held to be the possession and control of the owner—the owner holding the right not only to direct him what to do or not do, but to discharge and dispossess him at pleasure. Though there is no positive evidence to show that the defendants knew of the progress of this work prior to the injury of the plaintiffs, it is not too much to say that the testimony shows a state of facts from which it might reasonably be inferred that they did know. The timbers by which the roof of the building was raised, were placed in the street opposite the engine house in Jay street, a public street in the heart of the city, two weeks before the injury occurred; the defendants had authorized certain internal improvements or repairs to the house to be done; every step in the progress of the work of raising the roof and carrying up the wall must have been open and exposed to the view of all persons passing by, and after this injury occurred, a circumstance which must have become notorious, the work is allowed to progress to completion without any prohibition or remonstrance of the defendants. If the defendants did not know of the progress of this work, it must be because when they put a fire company in possession of an engine house, they do it with the express or implied understanding that the company shall be left to do as they please with it, without oversight or control by the corporation or its officers.

The roof was raised and the rear and side walls carried up in the latter part of October and early part of November, 1863, a season of the year when heavy easterly winds usually occur; at the time of injury the easterly front wall had not been elevated at all, thus leaving the side walls much more liable to be blown down than they would have been if no roof had been over them, and besides the wall next to the plaintiff's building was but eight inches thick, which was a violation of an ordinance of the defendants, long before passed. All conspire to show that much more than

ordinary care was required to prevent the falling of this wall, and that the injury resulted from great carelessness, as well as disregard of duty and law.   The judgment in favor of the plaintiff, Phœbe Van Wert, is $      ; and the judgment in favor of the plaintiff, Lavina Townsend, is for $      ; amounting together to $      .

The property of the defendants has been improved to the amount of $1,750, or to that amount of cost to the fire company, without cost to the defendants, and they are called upon to pay the above sum of $      , for damages resulting from what has been proved to be a nuisance, which for want of proper care on their part to prevent, they have allowed to be erected upon their property. There is no equity in their resisting these claims, and I think there is no law to shield them from payment.   (8 *Barb.* 358; 2 *Denio*, 433.)

The judgments must be affirmed, with costs.

From this decision an appeal was taken to this court.


SIDNEY V. LOWELL, *assistant corporation counsel, for appellants.*


I. In order to charge the city in an action for negligence in the performance of a public work, the law must have imposed a duty or conferred an authority to do such work, and which authority must be carried out by the proper city officers in the manner the law directs.   (*The Mayor, &c., of Albany* agt. *Cunliff*, 2 *N. Y.* 165; *Hanvey* agt. *City of Rochester*, 35 *Barb.* 177; *Hickok* agt. *Trustees of Plattsburgh*, 15 *Id.* 427; *Boyland* agt. *Mayor, &c., N. Y.* 1 *Sand. S. C.* 27; *Thayer* agt. *City of Boston*, 19 *Pick.* 511; *Mitchell* agt. *Rockwell*, 41 *Maine*, 363; *Green* agt. *City of Portland*, 32 *Id.* 431.)

The work in question could only lawfully be done under a contract authorized by the common council, and made by the board of contracts.   This is expressly provided by

the city charter (*Laws* 1862, *chap.* 63, § 33, *sub.* 3). No authority was given by the common council to make the improvement in question. The work was not done under contract with the board of contracts. It was proved on the trial that the work was done and paid for by the engine company, under a contract with them. Therefore, under every rule of law regulating the liability of municipal cor-porations, for the results of negligence in the construction of public works, the defendant is not responsible herein.

1. The law had conferred no authority upon any city officers to perform such work.

2. The work was not done by the city, or authorized by it, as provided by law.

The argument of the plaintiffs that the defendant assented to the prosecution of the work in the manner aforesaid, and by their conduct allowed the plaintiffs to be damaged, and that by the assent aforesaid of the city officers, the corporation is estopped from raising the above objections, has no force. The officers of the city having no power to assent to what they could not do directly, or to bind the city by such acquiescence.

Justice STRONG, in *The Mayor, &c., of Albany* agt. *Cunliff*, above cited (a suit brought to recover damages accrued through the insufficient construction of a bridge by the city of Albany), said : " If the common council could not, under the circumstances, bind the corporation expressly *a fortiori*, they could not bind them by way of estoppel." (*Brady* agt. *Mayor, &c. N. Y.* 20 *N. Y.* 316 ; *Hodges* agt. *City of Buffalo*, 2 *Denio*, 110 ; *Boom* agt. *City of Utica*, 2 *Barb.* 104.)

II. The negligence complained of (if any) was that of the contractor's servants, for which the city is not responsible. The city had no control over his workmen, or superintendence of their work, and for the consequences of his or their acts, the defendant would not be responsible even if he was acting under a contract with the city. The

negligence (if any) in this case, was that of the man who did the mason work for the contractors for the whole job. He was the servant of the contractors, and for his negligence they are liable. He is also liable individually. As the contractors are undoubtedly liable for the acts of their servants, the city cannot also be liable.

The court of appeals say : " Another condition to be regarded in the application of the rule of *respondeat superior* is, that there can be but one responsible superior for the same subordinate at the same time, and in respect to the same transaction." (*Blake* agt. *Ferris*, 1 *Seld.* 56, *and cases there cited ; see also Pack* agt. *Mayor, &c. of N. Y.* 4 *Seld.* 222 ; *Kelly* agt. *Mayor, &c. of N. Y.* 1 *Kern. p.* 432, *which follows the rule laid down in above cases, and Stevens* agt. *Armstrong,* 2 *Seld.* 435 ; *City of Buffalo* agt. *Halloway,* 4 *Seld.* 435 ; *Gent* agt. *The Mayor, &c. Sel. notes, No. p.* 68 ; *Gourdier* agt. *Cormack,* 2 *E. D. Smith,* 254 ; *Lockwood* agt. *Mayor, &c.* 2 *Hilton, p.* 66 ; *Hanvey* agt. *City of Rochester,* 35 *Barb.* 177 ; *Norton* agt. *Wiswall,* 26 *Id.* 618 ; *Weyant* agt. *N. Y. & Harlem RR. Co.* 3 *Duer,* 360 ; *Blackwell* agt. *Wiswall,* 24 *Barb.* 355 ; *Boom* agt. *City of Utica,* 2 *Id.* 104 ; *Storrs* agt. *City of Utica,* 17 *N. Y.* 104 ; *Benedict* agt. *Martin,* 36 *Barb.* 288 ; *Potter* agt. *Seymour,* 4 *Bos.* 140 ; *Gilbert* agt. *Beach,* 5 *Id.* 445 ; *O'Rourke* agt. *Hart,* 7 *Id.* 611 ; *all of which cases follow the rule laid down in Blake* agt. *Ferris.*)

III. The theory conceived by the county judge, on which he affirmed the judgment herein, viz. : That the defendants are liable as owners of the property, for damages resulting from the improper use of the same, has of course for its basis the same facts as the theory on which the plaintiff contended. It is merely seeking to show a liability arising from the circumstances of the case by viewing them from a different stand point, while he himself admits that on such facts the court of last resort has held a defendant not liable, as stated in second point, viz. : that the person who

actually performs the work negligently and improperly, is alone liable for any damage occasioned thereby.

GEORGE THOMPSON, *for respondents.*

I. By the city charter, it is made the duty of the common council to control and govern the firemen and fire companies of the city, to provide them with engine houses, and to control said houses (*Charter, title* 2, § 13, *sub:* 3). Also to prohibit and abate nuisances (*Title* 2, § 13, *sub.* 9).

The firemen and fire companies being under the control and management of the common council, and the engine houses under their regulation and control, the fire companies occupying such engine houses are not tenants, but rather servants or agents of the common council. As such servants or agents, so occupying the engine houses, their acts would in many respects bind the city. At least, notice to them as occupants for and under the city, of transactions and proceedings connected with the building, would be notice to the city. (*Bank of U. S.* agt. *Davis,* 2 *Hill,* 451 ; *Weisser* agt. *Denison,* 10 *N. Y.* 68.) The defendants being thus presumed to know of the alteration of the building by raising the walls, are presumed to assent to and countenance it, and are responsible for the consequence of the improper and unsafe method of its execution.

II. The city is bound to take cognizance of all matters placed under their charge and control, such as streets, wharves, public buildings, engine houses, &c. The duty imposed upon it requires frequent and constant care and attention to guard not only from the defects of dilapidation from time to time, and injuries by the elements, but to prevent unauthorized and even hostile acts of use and occupation, injurious to the public, such as the erection of structures, barriers and impediments thereon, calculated to injure private individuals, and the city is responsible for damages arising from such causes. (*Wendell* agt. *Mayor of*

*Troy*, 39 *Barb*. 329 ; *Grant* agt. *City of Brooklyn*, 41 *Barb.* 381.)

When such injurious acts are committed by the direct authority, or with the knowledge of the common council, no matter how short a time intervenes between the act and the accident, the city is liable; but when no direct authority or knowledge by the city of such injurious acts can be shown, their knowledge and authority is presumed, after the lapse of a reasonable time. In the case of a street obstruction, a few days would be amply sufficient to presume such notice, and to incur the liability arising therefrom. In the case of an engine house, occupied by the servants and agents of the city, such presumed notice would be at least equally speedy. The question of the want of action of the board of contracts, and the regularity of the proceedings for the act complained of, though constituting a good defence to a suit for labor and materials expended thereon, has nothing to do with the tortuous and negligent acts of the city, except to increase and aggravate them.

III. Aside from the obligation to control, direct and guard its own property, the charter imposes upon the common council the duty of prohibiting and abating nuisances generally. The city also incurs an equal liability with other land owners and occupants, for the erection and continuation of nuisances upon its premises. The control and management of the engine house being given by law to the city, the legal occupancy was by the city and not by the company, and the city is directly amenable for the damages resulting therefrom, in the same manner as private individuals. The previous remarks with regard to presumed and actual notice, are applicable to this head.

By the court, LOTT, Justice. Assuming, as was probably done on the trial, that the fire engine house and lot on which it is erected, were owned by the defendant, that is

Van Wert agt. The City of Brooklyn.

no proof that the alteration or raising of the building was done by or for it. On the contrary, the evidence shows this was done by the engine company, and that the defendant had no connection whatever with the work. The county judge therefore properly came to the conclusion that "under the testimony, neither the fire company nor the builders who erected the wall, can be considered as the agents or employees of the defendants in building it, and therefore, the defendants cannot be held liable as for the injury resulting from the carelessness of workmen employed by them in the performance of work which they were required or authorized to do or have done." He, however, affirmed the judgment in favor of the plaintiffs, on the principle as stated by him, " that all owners of real property, and especially where the property is actually improved and occupied by the owner, are bound so to use it as not to injure the property of others, and that any improper or careless use of it, whether by the owner personally, or by a person or persons by him put in charge of it, creating a liability to produce injury to others without their fault, will, when the injury actually occurs, render the owner liable to the party injured for damages resulting therefrom."

Conceding the principle laid down by him to be correct, I do not see how it can on the facts in this case be applied to sustain the judgment. It assumes the right of an owner to use his own property properly, and a liability to a party injured thereby, is based on an improper or careless use of it. If the defendant had authorized and actually contracted for the performance of the work which resulted in the injury complained of, that could not be construed into an improper or careless use of the property. Every owner of real estate, has the right to improve it either by the erection of new buildings thereon, or the alteration and improvement of those already erected. That right is generally exercised through the agency of other persons

employed to do the necessary work, and unless it affirmatively appears that in making the contract for its execution some improper act was required to be done, or some ordinary or proper precaution was improperly omitted, it is diffiult to see how the owner can be charged with improper conduct or negligence. There is nothing in the case before us to show or justify the conclusion that the defendant, even if the contract under which the work was done had been made by competent authority to bind it, could be charged with the improper or careless use of the property. So far as appears, there was nothing unusual in its provisions, or that it contains anything more or less than was necessary or proper to do the work properly.

The effect of the decision of the court below is to hold the defendant to a greater liability, although the work was done without its authority, and under an agreement with the company, than if it had been done by its express direction, and under a contract with its proper officers, duly executed. The contract was made with Snediker & Patton, builders. They, it appears, employed Kenny to do the mason work, and the injury to the plaintiffs resulted from the negligent execution of that work, and not from any fault or misconduct of Snediker & Patton. Under such circumstances the defendant would not have been liable. The injury was done while the work was in progress, by a party over whom the defendant had no control, and for whose acts it was not responsible. If an express authority to do the work would not have created a liability to the plaintiffs, a mere acquiescence in its performance could not, and we are led to the conclusion that the plaintiffs have sought redress from a party without fault, and that the recovery is wrong.

The judgment of the justice and of the county court, affirming the same, must be reversed, with costs of the appeals to the county court and in this court.