MARTIN J. HAVERTY *et ux. vs.* JOSEPH P. BASS.

Penobscot, 1875.—April 18, 1876.

*Municipal officers.*

The municipal officers of a city or town, in which any person is infected with
a disease dangerous to the public health, are by statute empowered to re-
move such person to a separate house, without first obtaining from two
justices of the peace a warrant, directed to an officer, requiring a removal
to be made.

The issuing of such warrant is not a condition upon which, but a means by
which, a removal may be effected by municipal officers, whenever a resort
to the aid of a warrant becomes necessary.

The statute conferring such power upon municipal officers relates to a matter
of police regulation, and is not amenable to the objection of unconstitu-
tionality.

ON REPORT.

TRESPASS, for an alleged assault upon the female plaintiff, on
April 15, 1873, by the defendant, who was then mayor of Bangor.
The assault complained of consisted in the action of a police officer
and a city physician, under the direction of the defendant, in taking
out of the arms of the mother, her child which was believed to be
sick with the small pox, for the purpose of removing it to the city
hospital. In so doing, the defendant was executing an authority
and directions committed to him by the mayor and aldermen of
Bangor, at a special meeting previously called to provide for the
exigency required by this case of sickness.

For the purposes of presenting the question of law involved in
this case, it is not denied by the plaintiffs, that the child was sick
of the small pox; and that the mayor and those concerned with
him, in doing what they did, used no more force than was reason-

ably necessary to accomplish what they did; and that the mayor and aldermen, in ordering the removal, acted in good faith, and for what they thought best for the safety of the inhabitants of Bangor; and that the child could be, and was, removed without great danger to its health.

But inasmuch as the servants of the defendant, by force, after a reasonable demand for entrance, broke and entered the husband's house (which was fastened against the officers,) and took the child away from the mother, by virtue of the provisions of R. S., c. 14, § 1, and without any warrant as provided in § 5, of said chapter, the plaintiffs contend that the defendant was a trespasser, and therefore liable for such entry and subsequent acts.

If the defendant was a trespasser, because not having such warrant, the action to stand for trial; if he was not, then the plaintiffs to be nonsuit.

*T. W. Vose*, for the plaintiffs.

*W. H. McCrillis & C. P. Stetson*, for the defendant.

PETERS, J. By R. S., c. 14, § 1, the municipal officers of a town, in which any person is infected with a disease dangerous to the public health, are required, if they think it best for the safety of the inhabitants, to remove such person to a separate house, provided it can be done without great danger to his health. By § 5, it is provided that "any two justices of the peace may issue a warrant, directed to a proper officer, requiring him to remove any person infected with contagious sickness, under the direction of the municipal officers of the town where he is."

The plaintiffs contend that the power of removal granted by § 1, can be legally exercised only by the use of the warrant described in § 5, and that municipal officers who without such warrant remove a sick person against his will, are trespassers. We do not think this construction of the statute the correct one.

The power committed to municipal officers by § 1, is, in the terms of the statute, unconditional. It is not qualified by any other section. On the contrary, enlarged powers are given to such officers by other provisions in chapter fourteen. Thus, by § 29, when the small pox breaks out in a town, they are to provide hos-

pitals for the sick and infected ; they shall cause the sick and infected "to be removed" thereto, unless their condition will not admit of it without imminent danger ; they may make a hospital of any man's house, where a sick or infected person is found (if deemed best,) subject to hospital regulations ; and the municipal officers must act "immediately," and with "all possible care" for the public safety. And so, in our opinion, § 5 was designed, not to cripple and impair the powers conferred upon town officers under § 1, but to make such powers more effectual. It gives municipal officers extra means wherewith to execute the authority entrusted to them. It enables them to command the services of others. It might be difficult to obtain the necessary assistance, in an undertaking so hazardous to health. But, by means of a warrant, they can compel executive officers to act. They can remove a sick person without the aid of a warrant, or they can use that instrumentality to enforce obedience to their commands, if a resort to such means of assistance becomes necessary. We do not perceive how it could be of importance to the sick man, whether a warrant was obtained or not. It would be the merest form in the world, as far as he is concerned. There is no provision for any examination by the justices, nor for notice to any parties to be heard, nor could any appeal be had. Our view of the meaning of the statute, is confirmed somewhat by a reference to the earlier acts of Massachusetts and of Maine on the subject, from which our present statutes came. The language of the act of 1821 was : "If need be," any two justices of the peace may make out a warrant. The same thing is implied in the present statute. Here the warrant was not needed. The municipal officers were able to do, what the law positively required them to do, without a warrant. The case of *Boom* v. *The City of Utica*, 2 Barb. 104, cited by the plaintiff, does not apply. It merely decides that the power of personal removal did not at the time of the act there complained of exist in New York, where there was no statute like ours. See *Seavey* v. *Preble*, 64 Maine, 120.

It is very clear and well settled that the statutes are not obnoxious to the objection of unconstitutionality, which is the other point argued by the plaintiffs. It is unquestionable, that the legislature can confer police powers upon public officers, for the pro-

tection of the public health. The maxim *salus populi suprema lex* is the law of all courts and countries. The individual right sinks in the necessity to provide for the public good. The only question has been, as to the extent of the powers that should be conferred for such purposes. We do not think that personal injuries need be apprehended from the action of officers in cases of this kind. Experience probably shows that communities and individuals are not promptly enough aroused to the dangers that beset them in such emergencies. If an injury is inflicted upon a person by the malice of the public servants, he has a remedy for it. And the petition for *habeas corpus* is always open to him. Further words, however, upon a policy, so universally regarded as a just one, are unnecessary. *Preston* v. *Drew*, 33 Maine, 558. *Gray* v. *Kimball*, 42 Maine, 299. *Lord* v. *Chadbourne*, id. 429. *Watertown* v. *Mayo*, 109 Mass. 315, 318, 319. *Taunton* v. *Taylor*, 116 Mass. 254. Cooley's Con. Lim. 584, *et seq.*

*Plaintiff's nonsuit.*

APPLETON, C. J., DICKERSON, DANFORTH, VIRGIN and LIBBEY, JJ., concurred.