## WILLIAM MITCHELL *versus* THE CITY OF ROCKLAND.*

The cases *Mitchell* v. *Rockland*, 41 Maine, 363, and 45 Maine, 504, reaffirmed.

The consent of the owners of a vessel to the appropriation of it for a hospital, by the health officers of a town, does not render the town liable for any injuries caused by the negligence of such officers, while they are in possession of it.

Neither the relation of master and servant, nor of principal and agent exists between a town and its health or police officers; nor is the town liable for their unlawful or negligent acts.

As a general rule, municipal corporations are not liable to a suit, except when the right of action is given by statute.

*It seems* that a city government cannot legally *ratify* the negligent, careless, or tortious acts of their officers, knowing them to be such, so as to make the city liable therefor.

The payment of a bill by a city government to one employed by the health officers is no evidence that the city government had knowledge that the services, for which the payment is made, were so negligently performed as to injure others; or that the negligent acts of such *employee* were approved or sanctioned.

ON EXCEPTIONS, to the ruling of RICE, J., and on MOTION TO SET ASIDE THE VERDICT, as being against evidence.

The evidence tended to show that the defendants' health officers took the plaintiff's vessel, by consent of his agent, for a hospital for a man sick with small pox; that the sick man died; that, after his death, the health officers sent one *Sweetland* to fumigate the vessel; that he so negligently performed his duties, that the vessel was set on fire and injured; and that the city government of the defendants paid a bill to *Sweetland* which contained a charge of two dollars for cleansing the vessel.

The verdict was for the plaintiff, and the jury found specially that the defendants had ratified and adopted the acts of the health officers and their servants in taking care

* This case (argued in 1862,) and the following cases of earlier date than the preceding cases, came into the hands of the present Reporter since the latter were printed.

of the sick man on board the plaintiff's vessel and in smoking and purifying her.

The defendants excepted to certain instructions of the presiding Judge, which are stated in the opinion.

*Peter Thacher*, for the defendants.

*A. P. Gould*, for the plaintiff.

The opinion of the Court was drawn by

APPLETON, C. J.—When this case first came before the Court, in 41 Maine, 363, it was then held that health officers are not authorized to take vessels, in quarantine, into their own possession and control, to the exclusion of the owner or of those whom he has put in charge—and that when such unauthorized possession and control are taken by the health officers or their servants, the town is not responsible for their acts. In 45 Maine, 505, it was held that the statute (R. S., 1841, c. 21,) "gave no authority to the selectmen or the health committee, who, by § 26, are clothed with the same authority, to take possession of, to control or appropriate a vessel, or any portion of the same, as a hospital;" and the principles of law established in the first decision between these parties were fully affirmed.

When this cause was last tried, the jury were instructed that, "the law does not authorize a health officer to assume the possession of a vessel, her cabin, or any part thereof to use as a hospital to cure a malignant or infectious disease, and, if he do assume such possession for such purpose, and any accident which occasions injury to a vessel or cargo happen *through the want of ordinary care* of such health officer or his servant, the city is not liable for such loss, *unless it* (the possession) *be by the consent of those having the legal control of the vessel.*"

The amount of this instruction is, that if consent be given by the owner, the town is liable, when it would not be liable, had no consent been given. That is, the consent being given, the liability of the town follows as a consequence of such consent.

The consent of the owners undoubtedly relieves the health officer from any liability arising from an interference with the vessel, which otherwise would have been unlawful. The town is not made liable because the owner gave such assent. This imposes no new liabilities upon the town nor creates any new obligations on its part. The owner allows a health officer to do what otherwise he could not legally do. It is a matter between them. If the statute gives the health officer no right to assume the control of a vessel and convert it into a hospital, but the owner does give such consent, then the so doing is authorized by the owner and not by the statute. The action of the health officer is by the permission of the owner, and not under the law, nor by any authority of the town. In case of negligence, on the part of such officer, and a loss arising therefrom, if the possession is by consent of the owners, the negligence of the officer must be at their risk. His possession and control are by virtue of their consent, and not by virtue of official right. The consequences of such possession, and of negligence while in such possession, must fall upon the person permitting it, and not upon a corporation, which neither directed, authorized, nor consented to such possession. The remedies, the party suffering may have, are against the person whose negligence caused the injury, not against the corporation by whose vote such person was elected.

In fine, if the health officer, who has no right to convert a ship in quarantine, into a hospital, without consent of the owners, does it by their consent, such consent of the owners to his so doing cannot give any new right or claim against the town, as a result and consequence of such consent. The person thus occupying by consent may be liable to the person consenting, for the consequences of his negligence during such occupation. The town is not a guarantor against the carelessness or negligence of such occupant nor liable to indemnify against losses arising therefrom.

The Court further instructed the jury, " that if the health committee, with the consent of those having the legal con-

trol of the vessel as contemplated, (i. e., if the health offi-cer did assume possession and control through Sweetland, of so much of the cabin as was necessary to take care of the sick man and to prevent the spreading of small pox,) did take control of the cabin, *then* the city would be liable for their acts and the acts of Sweetland, if he acted under their directions and as their servant and agent in what he did in relation to the vessel."

And "that, before the city could be held responsible, they must be satisfied that the acts complained of were done by the authority of a health committee, who had been duly elected and sworn into office, *or*, that the acts complained of had been ratified by the city, with a full knowledge of all the facts in relation thereto."

The acts complained of were the negligent and careless acts of Sweetland, who was in the employ of the board of health of the defendant city. That he was authorized to be careless or negligent is not pretended, and, if pretended, is not proved. Nor is there any proof that he was an un-suitable person to perform the services he was employed to render.

By the first instruction, just referred to, and by the first branch of the alternative instruction, a town or city may be made liable for acts it never authorized,—for the illegal and tortious acts of its officers and their servants,—as well as for the results of their carelessness and negligence.

The town or city chooses its health and police officers in pursuance of the requirements of a statute which prescribes their duties to the public. Neither the relation of master and servant, nor that of principal and agent exists between them and the municipal corporation to which they owe their election. They are appointed for public purposes. An officer may be liable for negligent or illegal acts to the per-son injured thereby. But is the town or city a warrantor or guarantor against all the torts or neglects of its police or its health officers? If so, then is the town a surety to the public for every person it may elect, that he will per-

form the duties incumbent upon him, and is responsible in all cases of neglect for his non-performance or his careless performance of such duties. Nor is this all, for, according to the instructions referred to, a town or city is made equally responsible for the good conduct of all persons employed by its officers, and liable for their misfeasances or non-feasances.

It was decided in *Walcott* v. *Swamscott*, 1 Allen, 101, "that a town is not liable for an injury sustained by reason of the negligence of a laborer employed by one of its highway surveyors, to aid him in the performance of the duties of his office." "It was held, in *Hafford* v. *New Bedford*, 16 Gray," remarks BIGELOW, C. J., in the case just re-referred to, "that, where a municipal corporation elects or appoints an officer, in obedience to an Act of the Legislature, to perform a public service, in which the town has no particular interest and from which it derives no special benefit or advantage in its corporate capacity, but which it is bound to see performed in pursuance of a duty imposed by law, for the general welfare of its inhabitants or of the community, such officer cannot be regarded as the servant or agent of the town, for whose negligence or want of skill in the performance of his duties a town or city can be held liable. To the acts and conduct of an officer so appointed or elected, the maxim *respondeat superior* is not applicable." So in *Buttrick* v. *Lowell*, 1 Allen, 172, it was held that a city is not liable for an assault and battery committed by its police officers, even though it was done in an attempt to enforce an ordinance of the city. "Police officers," remarks BIGELOW, C. J., "can in no sense be regarded as agents or servants of the city. Their duties are of a public nature. Their appointment is devolved on cities and towns by the Legislature as a convenient mode of exercising a function of government; but this does not render them liable for their unlawful or negligent acts." The same reasoning is equally applicable to the case of health officers and their doings. "It is not conceivable," remarks the Court, in *Fox* v. *Northern Liberties*, 3 W. & S., 103, "how

Mitchell *v.* City of Rockland.

blame can be fastened upon a municipal corporation because its officer, who is appointed or elected for the purpose of causing to be observed and carried into effect the ordinances duly passed by the corporation for its police, either mistakenly or wilfully, under a color of his office, commits a trespass."

As a general rule, municipal corporations are not liable to a suit, except when the right of action is given by statute. They are usually termed "*quasi* corporations"—and are distinguished in many respects from proper aggregate corporations. *Riddle* v. *Proprietors of Locks and Canals*, 7 Mass., 169. "*Quasi* corporations," observe the Court, in *Mower* v. *Leicester*, 9 Mass., 247, "created by the Legislature for purposes of public policy, are subject, by the common law, to an indictment for the neglect of duties enjoined on them; but are not liable to an action for such neglect, unless the action be given by some statute." So in *Adams* v. *Wiscasset Bank*, 1 Greenl., 361, MELLEN, C. J., says, "no private action, unless given by statute, lies against *quasi* corporations for a breach of duty." As an illustration of this, it is well settled that towns are liable for defects in their highways by statute only, and not by the common law. Hence, unless a case is brought within the scope of the statutory provisions, it cannot be maintained. *Farnum* v. *Concord*, 2 N. H., 392; *Baxter* v. *Winooski Turnpike*, 27 Vt., 123.

The principle seems fully established, that a town is not liable to an individual for its neglect or omission to perform, or its negligent performance of those duties, which are imposed upon all towns, without their corporate assent and for public purposes, unless the right of action be conferred by statute. Thus, in *Bigelow* v. *Randolph*, 14 Gray, 541, it is held, that a town, which has assumed the duties of school districts, is not liable for an injury sustained by a scholar, attending the public school, from a dangerous excavation in the school yard, owing to the negligence of the town officers, on the ground, as stated by METCALF, J., "that a private action cannot be maintained against a town, or other *quasi*

corporation, for a neglect of corporate duty, unless such action be given by statute." So in *Eastman* v. *Meredith*, 36 N. H., 284, when a building, erected by a town, for a town house, was so imperfectly constructed that the flooring gave way at the annual town meeting, and a legal voter, in attendance on the meeting, received thereby bodily injury, it was held that he could not maintain an action against the town, to recover damages for the injury. In this case, the distinction between aggregate corporations and *quasi* corporations, as towns, cities, counties, &c., was taken, and the law, in reference to their respective obligations and liabilities, was thoroughly examined and very learnedly discussed by Mr. Ch. Jus. PERLEY. The general views on this subject, already stated, have been recently considered and deliberately affirmed in this State, in *Brown* v. *South Kennebec Agricultural Society*, 47 Maine, 275.

If there has been a neglect of a public corporate duty, for which no right of action has been provided by statute for the party aggrieved, this suit cannot be maintained. If there has been no neglect of duty, the plaintiff has no ground of complaint.

But it is argued, that whether the instructions, already considered, are correct or not, the verdict may be sustained, on the ground of a subsequent ratification of the careless acts of the health officers of the defendant city or of their servants, by the action of the city government, in the payment of Sweetland's bill.

The instruction, on this point, requires a ratification, with a full knowledge of all the negligent or tortious acts to be ratified,— in other words, an assumption by the city of the liability of the health officers and their servants arising from their wrong doings, or their negligent doings. This is materially different from a ratification of an act of controverted legality, in which the pecuniary interests of the city are involved, and where its rights are in question. In the present case, the city, before its alleged ratification, had nothing at issue,— no interests at stake.

Mitchell *v.* City of Rockland.

It may well be doubted, whether the city government could legally ratify the negligent, careless, or tortious acts of their officers, knowing them to be such, so as to make the city liable therefor. In *Vincent* v. *Nantucket,* 12 Cush., 103; it was decided that a town was not bound, even by its corporate vote, to pay the expenses of a field driver, in defending a suit brought for taking up and impounding cattle, running at large contrary to law; such agreement not being within the scope of a town's corporate powers. "In relation to field drivers," observes MERRICK, J., "the whole corporate power of a town is exercised and exhausted in their election. It has afterwards no guardianship, control, or authority over them, in respect to their observance or neglect of the single specific duty, which the law imposes upon them. It is not responsible for their fidelity; and it cannot gain by their diligence, or lose by their official inattention, or carelessness." There is no authority given to the town, to ratify the official negligence of its officers. A distinction may be taken between the ratification of an unauthorized act by an individual, who is personally responsible for the consequences of his action, and a ratification by the officers of a municipal corporation, the effect of which would be to impose burdens more or less onerous upon their constituents.

But, assuming that the negligent acts of the health officers or their servants were susceptible of ratification, there is no proof from which a ratification, with *a knowledge of the acts to be ratified,* can be reasonably inferred. The act relied upon, as showing a ratification, is the payment of Sweetland's bill, in which is found a charge, "to cleansing the vessel $2,00," from which it is insisted, that the inference may be legitimately drawn, that all the acts of Sweetland, however negligent or tortious, in the process of "cleansing," were thereby sanctioned and approved.

This charge shows nothing from which negligence or wrongdoing can be inferred. It affords no information of the manner in which the work was done, still less that it

was done negligently or carelessly. A bill of two dollars for cleansing a vessel can hardly be deemed notice that the work charged was so negligently and recklessly performed as to render the individual performing the same liable for a thousand times that sum. Nor can any one believe it would have been paid if it had been supposed that the effect of payment would have been to impose, upon the corporation making such payment, this enormous liability.

There is nothing but the fact of payment, indicating that the defendants had knowledge of this misfeasance of Sweetland. The evidence is entirely the reverse. They knew nothing of his neglect or carelessness. He denied that he had been guilty of any on the trial. There is no proof tending to show it, which was disclosed to the defendants.

The inference, then, of a ratification of all acts done, whether illy, negligently or tortiously done, from the fact of payment, was unauthorized. The premises are too narrow to support so broad a conclusion.

Nor are there wanting numerous authorities in support of this position. In *Perley* v. *Georgetown*, 7 Gray, 464, it was held, that a town was not liable for an arrest and imprisonment by its collector, for non-payment of taxes illegally included in his warrant and since abated, although it afterwards paid the collector's fees for serving the warrant. "In this case," remarks METCALF, J., "the town did not authorize its treasurer and collector to commit the plaintiff to prison for not paying a tax that had been abated, nor did it ratify the act of imprisonment by paying the collector's fees for commitment and the jailer's charges. If these payments had been made by an individual, it could not be pretended that he thereby made himself liable to the plaintiff in an action for false imprisonment. Nor can the payment thereof, by the town, render the town so liable. The payments may have been made and doubtless were made for a very different purpose than that of ratifying or justifying the acts of their collector." So in *Buttrick* v. *Lowell*, 1 Allen, 172, the action of a city, in authorizing and employing its

solicitor to appear and defend an action brought against its police officers for an assault committed by them, does not make the city liable to pay damages for the assault and battery. The Court, in *Boone* v. *Utica*, 2 Barb., 111, having come to the conclusion that the committee of the common council in undertaking to execute their duties had committed a trespass, continue thus :—"It is insisted, however, upon the authority of what is said in *Thayer* v. *Boston*, 19 Pick., 511, the common council affirmed and ratified the acts of the committee by defraying the expenses of repairs and of medical attendance, and provisions furnished the family. To this argument there are two answers. (1) There is no evidence that the common council, by any resolution or legal action, ever authorized the payment of their particular expenses, much less, that they did so with a full knowledge of the unlawful trespass which had been committed upon the rights of the plaintiff; and, if they did, it would not necessarily follow that they intended to adopt the trespass as their own. (2.) We would say, as the Court said in reply to a similar argument, in *Hodges* v. *Buffalo*, 2 Denio, 113, 'it cannot be maintained that a corporation can, by a subsequent ratification, make good an act of its agent, which it could not have empowered him to do.' This very case, from Pickering, is a direct authority for holding that the city is not liable, unless the common council had the power to authorize the doing of the act complained of."

*Exceptions and motion sustained.*

*New trial granted.*

CUTTING, DAVIS, WALTON and BARROWS, JJ., concurred.