## MICHAEL F. KELLEY, Administrator, *vs.* SAMUEL P. COOK, City Treasurer.

### PROVIDENCE—OCTOBER 27, 1898.

PRESENT : Matteson, C. J., Tillinghast and Rogers, JJ.

(1) *Municipal Corporations. Police Officers. Respondeat Superior.*

Police officers appointed by a city to perform a public service are not such agents or servants of the city that the latter becomes responsible for their unlawful acts or negligence while in the performance of that service.

In appointing these officers the mayor and aldermen merely exercise one of the functions of government in which the city has no particular interest, and from which it derives no special benefit.

(2) *Arrest. Care of Persons Arrested.*

In the temporary care of persons arrested, the city, by its police department, is aiding in the enforcement of law and discharging a public duty for which it receives no pecuniary benefit ; and it is legally responsible to no one for the manner in which it discharges this duty.

The police regulations of a city are not made and enforced in the interest of the city in its corporate capacity, but in the interest of the people.

TRESPASS ON THE CASE against a city, alleging that one of its police officers wrongfully arrested the plaintiff's intestate, and so neglected to care for him while ill in its police station that he died because of such neglect. Heard on demurrer to the declaration.

TILLINGHAST, J. The declaration alleges, in substance, that on the 17th day of February, 1897, the city of Woonsocket, by Charles A. Hoar, a police officer and servant of said city, without authority of law, did arrest John H. Kelly (the plaintiff's intestate) and by its police officers, being servants of said city, did, without authority of law, confine said Kelly and deprive him of his liberty for fifteen hours, in the police station in said city, said station being then and there under the control of the city. And thereupon, upon the unlawful arrest and confinement of said Kelly, it became the duty of said city to exercise the utmost diligence in the care of said Kelly in order that his bodily health might not become im-

paired while in said custody. That while so confined he became ill, and said city, wholly unmindful of its duty in that regard, neglected to provide for him, and that, as a result of said neglect, said Kelly's illness increased and caused his death in said police station on the 18th day of February, 1897, although he was in the exercise of due care. Wherefore the plaintiff, as administrator on the estate of said Kelly, brings this action.

The defendant demurs to the declaration on several grounds, but mainly on the ground that the city is not liable for the negligence, misconduct, or wrongful acts of its police officers.

(1) It is conceded by the plaintiff that police officers appointed by a city to perform a *public service* are not its agents or servants so as to render it responsible for their unlawful acts or negligence while in the performance of such service, but are to be regarded as public or State officers with such powers and duties as the State confers upon them; and that the doctrine of *respondeat superior* is not applicable. It is also conceded that said Charles A. Hoar was not the servant of said city in any other capacity than as one of its police officers. The plaintiff contends, however, that if the public service be the arrest and detention of persons, then police officers must have an appointment which will confer the power necessary to the performance of that service; otherwise they cannot be said to be public officers when they make an arrest. Stated more concisely, the plaintiff's claim is that the mere appointment of said Hoar as a police officer conferred no power upon him to make the arrest in question; that in order to have clothed him with such authority it was necessary that he should have been made a *police constable.* Whether this contention is correct or not it is not necessary for us now to decide. For if said Hoar was authorized to make the arrest, plaintiff admits that he has no case. And if he was not, then, it being conceded as aforesaid that he was not a servant of the city in any other capacity than as one of its police officers, which is undoubtedly the law, it follows that in making the arrest he was not acting within the scope of his authority and hence was a mere trespasser. The mere fact,

even if it be a fact, that said Hoar, in his capacity as a policeman simply, had no authority to arrest. and detain plaintiff's intestate, did not have the effect to strip him 'of his character as a public officer under the charter of said city. (Pub. Laws R. I. cap. 728, § 4, clause 2.') For whatever the extent of his authority might have been, he was unquestionably a *police officer* of said city, *appointed to perform a public service.* In appointing him the mayor and aldermen were merely exercising one of the functions of government, in which the city had no particular interest and from which it derived no special benefit or advantage in its corporate capacity (See *Wixon* v. *Newport,* 13 R. I. 454); and this being so, he cannot be regarded in any sense as the agent or servant of said city, so as to render it liable for his acts. *Walcott* v. *Swampscott,* 1 Allen, 101; *Butterick* v. *Lowell,* 1 Allen, 172; *Aldrich* v. *Tripp,* 11 R. I. 143; 2 Dill. Mun. Corp. 4 ed. § 975; *Barbour* v. *Ellsworth,* 67 Me. 294.

But the plaintiff argues that if the city directed or authorized the acts complained of, the principle of *respondeat superior* applies. There is nothing in the declaration, however, which shows that the city either directed or authorized said acts. The allegation is that the city, " *by its police officers, being servants of said city,*" committed said acts. It will at once be seen, therefore, that the whole question turns upon whether said policemen were the agents or servants of

---

[1]*Clause 2.* The aldermen may appoint, upon the nomination of the mayor, so many and such police officers, including the chief of police, as the ordinances of the city council may determine, which said officers shall hold their respective offices during the pleasure of the board of aldermen, except as hereinafter provided, and the mayor may at any time suspend any such officer from his office until the adjournment of the next meeting of the board of aldermen, at which meeting he shall report all such suspensions, with his reasons therefor: *Provided, however,* that the members of the paid police department of said city shall not be subject to removal from office at any time except for misconduct or incapacity of such a character as the board of aldermen may deem a disqualification for said office, and all such removals shall be by the board of aldermen, upon charges made in writing and of which the officer complained of shall have had notice and an opportunity to be heard thereon. *(Charter of the city of Woonsocket, passed June 13, 1888.)*

said city in the premises. And as they clearly were not, there is nothing left upon which the action can be sustained. See cases cited in 19 Am. & Eng. Ency. L. 558; *Maxmilian* v. *New York*, 62 N. Y. 160; Goodnow's Munic. Home Rule, 106–7, 113–17.

(2)    The plaintiff says, however, that the *gravamen* of the action is the negligence of the defendant in caring for a man whom it unlawfully arrested and detained. This position assumes in the first place that the city made the arrest, which, as we have already said, is unwarranted, and in the second place, that the city is liable in an action of this sort if it fails to take proper care of a person while temporarily confined in its police station. This ground is also wholly untenable. In the temporary care of persons under arrest, the city, by its police department, is aiding in the enforcement of the laws and thus discharging a public duty for which it receives no pecuniary benefit, and for the manner in which it discharges this duty it is legally responsible to no one. The police regulations of a city are not made and enforced in the interest of the city in its corporate capacity, but in the interest of the people. *Calwell* v. *Boone*, 51 Ia. 687. Of course it is to be presumed that the common dictates of humanity will prompt those in charge of the municipal affairs of a city to properly provide for persons under arrest; but that it should be held liable to an action in favor of a person who has been arrested, whether rightfully or wrongfully, on the ground that he has not received proper care and attention, is a doctrine which has not yet been incorporated into our municipal law. In the late case of *Gullikson* v. *McDonald*, 62 Minn. 278, it was held that a municipal corporation is not liable for negligently maintaining its lockup or prison in a defective and unfit condition, by reason of which a prisoner confined therein is injured. See also *Gilboy* v. *City of Detroit*, J. Smith's Cases on Munic. Corp's, 150; *Richmond* v. *Long's Administrators*, 17 Gratt. 375; Dill. Mun. Corp. 4 ed. § 977 and cases in note; *Mitchell* v. *Rockland*, 52 Me. 118; *Brown* v. *Vinalhaven*, 65 Me. 402. As we have been unable to find any authority to the contrary of the doctrine

above announced, and as the plaintiff has not referred us to any, there seems to be no occasion for a further consideration of the question.

Demurrer sustained.

*Walter I. Ballou,* for plaintiff.

*Erwin J. France, City Solicitor of City of Woonsocket,* for defendant.