261 A.2d 896.

HELEN BECKER, *Executrix of the Estate of Frank Harold Becker* vs. HAROLD E. BEAUDOIN, *Town Treasurer of the Town of Coventry.*

FEBRUARY 9, 1970

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

ROBERTS, C. J. This civil action to recover damages resulting from the death of Frank Harold Becker was brought pursuant to the provisions of the Wrongful Death Act, so called, G. L. 1956, §10-7-1, et seq., after the timely making of a claim against the Town of Coventry pursuant to the provisions of §45-15-5 and denial thereof by the town council. The matter was subsequently heard by a justice of the Superior Court on the defendant's motion to dismiss, which was granted. From that decision the plaintiff prosecuted an appeal to this court.

The plaintiff alleges that Becker had been taken into custody by the state police in the course of the investigation of a homicide. He was subsequently turned over to the Coventry police and by them was incarcerated in the cell block at the Coventry police station. At about three o'clock in the morning of July 25, 1966, while so locked up, he fashioned a rope from a blanket and hanged himself. It is alleged in the complaint that the Coventry police had been cautioned that Becker was in a state of severe mental depression and that he should be carefully watched while incarcerated because of his suicidal tendencies. The complaint goes on, however, that the Coventry police, despite such knowledge, negligently allowed him to possess in his cell a blanket with which he ultimately took his own life.

The defendant's motion to dismiss in this case relies specifically on the doctrine of governmental immunity as stated in the case of *Kelley* v. *Cook*, 21 R. I. 29, 41 A. 571. There this court held that, in appointing police officers, the appointing authority was merely exercising a function of government, in which the city had no particular interest and from which it derived no special benefit or advantage in its corporate capacity. We went on to hold that the police officer, therefore, is not to be regarded as an agent

of said city so as to render the municipality liable for his tortious conduct. It is clear from the record that the trial justice, in granting the motion to dismiss, relied on *Kelley* v. *Cook, supra,* holding that in these circumstances a municipality cannot be sued.

In *Kelley* the court dealt with the question of whether a municipality would be liable for the tortious conduct of a police officer. However, it was but one of a number of early cases in which the rule that has long prevailed in this state was developed, that is, that municipal corporations are immune from liability for the tortious conduct of their agents and servants in the performance of a governmental function but are liable when engaged in similar tortious conduct in the performance of a proprietary function. See *Aldrich* v. *Tripp,* 11 R. I. 141; *Wixon* v. *City of Newport,* 13 R. I. 454.

The doctrine of municipal immunity as applied in this state recognizes that a municipality may act in a dual capacity. It may, on the one hand, act as a corporate individual engaging in what have become known as proprietary functions. In the exercise of these corporate powers, a municipality generally is subject to civil liability for the omissions, negligence, or misconduct of its officers, agents, and servants. However, a municipal corporation may also act in the discharge of duties of a public character from which it derives no corporate advantage and in the exercise of which it is performing what is characterized as a governmental function. This court has clung to the doctrine that in the exercise of such a public or governmental function a municipality is not subject to civil liability for the tortious conduct of its agents or servants unless such liability is specifically imposed by statute. *Wroblewski* v. *Clark,* 88 R. I. 235, 146 A.2d 164. It has been, therefore, the settled rule that a municipal corporation is immune from liability for the tortious conduct of its agents and servants when

it is acting in the discharge of some function for the state or public in a matter in which it has no private or corporate interest. *Karczmarczyk* v. *Quinn,* 98 R. I. 174, 200 A.2d 461.

We have stated the general rule on municipal immunity with such emphasis because, in the posture in which the instant cause is presented, it purports to confront this court with the issue as to whether the police department of a municipality, when engaged in the care and custody of prisoners, should have immunity from liability for the tortious conduct of members of the department in the discharge of that duty. It is to be realized, however, that the real issue before us is much broader. What is confronting us for decision is whether the doctrine of municipal immunity in the field of governmental functions should be abandoned.

If the doctrine as applied here is defensible at all, it is so because the control and custody of prisoners by the police is conduct engaged in in the exercise of the police function because, in so acting, the police are performing a governmental function. In short, the immunity of police officers so engaged derives from the basic doctrine of immunity of municipalities from liability for the acts of their agents and servants engaged in a governmental function. Obviously, then, inherent in the issue raised here is the question of the validity of the whole concept of immunity from liability of municipalities for the tortious acts of their agents and servants in the performance of a governmental function.

The doctrine of municipal immunity for tortious conduct engaged in during the performance of a governmental function as distinguished from a proprietary function has long been the majority rule in the United States. Much has been written as to the source of the doctrine and the reasons for adherence to it by American courts. An excellent discussion of the theory that it carried over into American jurisprud-

ence the concept of the English law that the King could do no wrong and that the sovereign was above the courts is set out in *Muskopf* v. *Corning Hospital District,* 55 Cal.2d 211, 214, 359 P.2d 457, 458, footnote 1. Many of the cases to which reference is hereinafter made in discussing the doctrine also contain expositions of various theories upon which the doctrine rests. In our opinion, however, it is unnecessary to discuss the theories upon which the doctrine is predicated. It suffices to say that the doctrine of municipal immunity distinguishing between governmental function and proprietary function was the majority rule in this country practically until the last decade. The question is now whether it should be abrogated in this state by judicial decision.

The immunization of municipal corporations from liability for the tortious conduct engaged in by their officers or servants during the performance of a governmental function has been repudiated repeatedly during the last decade. In 1957 in *Hargrove* v. *Town of Cocoa Beach, Fla.,* 96 So.2d 130, 133, the court, in abolishing the distinction between governmental and proprietary functions, stated that in its opinion and because of incongruities in an application of the immunity doctrine "* * * the time has arrived to face this matter squarely in the interest of justice and place the responsibility for wrongs where it should be." The court notes its failure to adhere to the doctrine of stare decisis in so doing. However, it said: "The modern city is in substantial measure a large business institution. While it enjoys many of the basic powers of government, it nonetheless is an incorporated organization which exercises those powers primarily for the benefit of the people within the municipal limits who enjoy the services rendered pursuant to the powers. To continue to endow this type of organization with sovereign divinity appears to us to predicate the law of the Twentieth Century upon an Eighteenth Century

anachronism. Judicial consistency loses its virtue when it is degraded by the vice of injustice." *Id.* at 133.

The Illinois court repudiated the doctrine in *Molitor* v. *Kaneland Community Unit District No. 302*, 18 Ill.2d 11, 163 N.E.2d 89, the court stating its reasons for its repudiation of the doctrine as follows: "It is a basic concept underlying the whole law of torts today that liability follows negligence, and that individuals and corporations are responsible for the negligence of their agents and employees acting in the course of their employment. The doctrine of governmental immunity runs directly counter to that basic concept. What reasons, then, are so impelling as to allow a school district, as a quasi-municipal corporation, to commit wrongdoing without any responsibility to its victims, while any individual or private corporation would be called to task in court for such tortious conduct?" *Id.* at 20, 163 N.E.2d at 93.

The doctrine was also repudiated in 1961 by the Supreme Court of California in *Muskopf* v. *Corning Hospital District, supra.* There the court, speaking through Mr. Justice Traynor, said: "The rule of governmental immunity for tort is an anachronism, without rational basis, and has existed only by the force of inertia. * * * None of the reasons for its continuance can withstand analysis. No one defends total governmental immunity. In fact, it does not exist. It has become riddled with exceptions, both legislative * * * and judicial * * * and the exceptions operate so illogically as to cause serious inequality." 55 Cal.2d at 216, 359 P.2d at 460.

In *Brinkman* v. *City of Indianapolis*, Ind. App., 231 N.E.2d 169, 171, the Appellate Court of Indiana abolished the doctrine of sovereign immunity. Concerning its action the court said: "The inherent inequities found in the governmental-proprietary distinction and the availability of liability insurance as a substitute for and a supplement to

governmental liability, have caused many states to abrogate the doctrine of municipal tort immunity." Then the court, after further discussion of the inequities resulting from the maintentance of the distinction between governmental and proprietary functions, said: "After careful consideration we are of the opinion that the doctrine of sovereign immunity has no proper place in the administration of a municipal corporation." *Id.* at 172.

We have quoted at some length from the cases referred to above to point up the unanimity of opinion as to the anachronistic character of the doctrine of municipal immunity and the increasing tendency of the courts to abrogate the doctrine. The courts have over the years resorted to strained distinctions in order to offset the inequities that resulted from applications of the doctrine. We agree with the New Jersey court that there is no doctrine more firmly embedded in the law than the principle that liability follows tortious wrongdoing and that employers or principals, individual or corporate, are responsible for that wrongdoing when it is committed by agents or employees acting within the scope of the employment. We further agree with the New Jersey court that the concept of municipal immunity is in headlong collision with this basic rule of liability for tortious conduct. *McAndrew* v. *Mularchuk*, 33 N. J. 172, 162 A.2d 820.

In *Karczmarczyk* v. *Quinn*, 98 R. I. 174, 200 A.2d 461, the plaintiff had tripped over a hose line laid in the street by members of the fire department for the purpose of furnishing water under pressure to the water department, which was selling such water to a contractor for the washing down of debris on a bridge. We there held that while the hose line had been laid by members of the fire department, they did not do so in the course of performing the governmental function of firefighting but rather they were performing a proprietary function for the water department,

that is, supplying water for sale. By such distinction the plaintiff was held to have a right to recover if negligence were shown in the operation of the firemen in laying the line.

However, we were fully cognizant at the time we wrote that opinion that had, in the same circumstances, the line been laid by the fire department to extinguish a fire in the debris at the bridge construction site, the plaintiff would have been barred from acting by the doctrine of governmental immunity. This incongruity and the persuasive language which other courts have used in referring to incongruities arising out of the doctrine persuade us to conclude that a municipal corporation should not be immunized from liability for the tortious conduct of its agents or servants on such theory and that the doctrine should no longer be given judicial approbation.

The defendant argues vigorously that if the doctrine of municipal immunity is to be abrogated, it is beyond the power of the courts to so act, such authority reposing exclusively with the legislature. In this contention defendant was joined by the City of Providence, which also filed a brief amicus curiae urging that the power to eliminate municipal immunity is legislative and cannot properly be exercised by the courts. We are unable to agree.

In *Rampone* v. *Wanskuck Buildings, Inc.,* 102 R. I. 30, 227 A.2d 586, we were confronted with this contention. There the question before us was whether the doctrine of privity between landlord and tenant should be abrogated by judicial fiat. Arguments to the contrary were expressly made, the substance thereof being that if it is to be done, it should be done by the legislature because of the circumstances involved in such abrogation. We held, however, that where a rule of law has been limited by judicial fiat, the limitation may be abrogated by the judiciary. In so holding, we relied on the language used in the concurring opinion in *Henry* v. *John W. Eshelman & Sons,* 99 R. I. 518,

527, 209 A.2d 46, 51: "While a deferral to the legislature in the initiation of changes in matters affecting public policy may often be appropriate, it is not required where the concept demanding change is judicial in its origins." We now reiterate the holding that we took in *Rampone* v. *Wanskuck Buildings, Inc., supra.*

The argument of defendant has been rejected by many courts. In *McAndrew* v. *Mularchuk, supra,* at 193, 162 A.2d at 832, the New Jersey court said: "The borough argues that any such change should come about, if at all, by action of the Legislature. But the limitation on the normal operation of *respondeat superior* was originally placed there by the Judiciary. Surely it cannot be urged successfully that an outmoded, inequitable, and artificial curtailment of a general rule of action created by the judicial branch of the government cannot or should not be removed by its creator." Similarly, in *Pierce* v. *Yakima Valley Memorial Hospital Ass'n,* 43 Wash.2d 162, 260 P.2d 765, the Supreme Court of the state of Washington said that where judicial, and not legislative, action denied an injured person access to the courtroom, the judiciary can and, in proper circumstances, should reopen the tribunal to such plaintiff.

An excellent treatment of defendant's contention is to be found in *Spanel* v. *Mounds View School District No. 621,* 264 Minn. 279, 118 N.W.2d 795. There the Minnesota court said at 292, 118 N.W.2d at 803: "* * * we do not share the view that a court-made rule, however unjust or outmoded, becomes with age invulnerable to judicial attack and cannot be discarded except by legislative action. While the court has the right and the duty to modify rules of the common law after they have become archaic, we readily concede that the flexibility of the legislative process — which is denied the judiciary — makes the latter avenue of approach more desirable." We agree with the concept thus stated by the Minnesota court.

We are persuaded, however, that where some rule of law constitutes a limitation on some general doctrine arising out of judicial action, such limitation may be eliminated by the courts. We do recognize that the legislature, because of its fact-finding power and its authority to weigh social and economic factors and to provide for limitations on and regulation of actions brought to recover under the general rule, is the appropriate governmental agency to provide for such limitations on assertions of the right and to regulate the prosecution of claims thereunder. It is our conclusion, then, that while the courts need not wait on action of the legislature to repudiate unsound or archaic doctrines, we should recognize that, in repudiating such doctrines by judicial action, it is incumbent upon the courts in appropriate circumstances to provide an ample period of time during which the legislature may provide for limitations consistent with the social and economic factors involved and for the regulation of assertions of the right.

We think the proper rule is aptly stated in *Spanel* v. *Mounds View School District No. 621, supra.* There the Minnesota court said: "However, the court is unanimous in expressing its intention to overrule the doctrine of sovereign tort immunity as a defense with respect to tort claims against school districts, municipal corporations, and other subdivisions of government on whom immunity has been conferred by judicial decision arising after the next Minnesota Legislature adjourns, subject to any statutes which now or hereafter limit or regulate the prosecution of such claims. However, we do not suggest that discretionary as distinguished from ministerial activities, or judicial, quasi-judicial, legislative, or quasi-legislative functions may not continue to have the benefit of the rule. Nor is it our purpose to abolish sovereign immunity as to the state itself." 264 Minn. at 292, 118 N.W.2d at 803.

We hold, then, that the immunity conferred by the

courts of this state upon municipal and quasi-municipal corporations is abrogated as to claims against such municipal or quasi-municipal corporations arising after the thirtieth day of June, 1970, subject, however, to any legislation which has been or may be enacted by the general assembly limiting or regulating the prosecution of such claims as arise after said June 30, 1970. It is to be understood that this decision does not in any manner abolish or limit the sovereign immunity that inheres in the state itself.

We turn, then, to a consideration of plaintiff's contention that if the doctrine of municipal immunity be overruled, she be given the benefit of such decision even though the cause of action accrued to her prior to the decision so overruling the doctrine. In *Bishop* v. *Langlois,* 106 R. I. 56, 256 A.2d 20, we directed attention to some federal cases in which it was held proper to give to the party who instituted the action which resulted in the overruling of a doctrine or rule the benefit of the revised state of the law. In those cases the conclusion rested on the obligation of the courts to resolve issues only in concrete controversies and to provide counsel with an incentive to advance contentions requiring a change in the law. *Castro* v. *United States,* 396 F.2d 345, 349; *Stovall* v. *Denno,* 388 U. S. 293, 300, 301, 87 S.Ct. 1967, 1972, 18 L.Ed.2d 1199, 1205, 1206. In *Bishop* we said that we concurred in the view taken by the federal courts and held that the fact that the first applicant to raise the issues receives the benefits thereof does not have the effect of precluding the court from giving the rule so stated prospective operation only. We said in that case: "The apparent inequities arising out of the fixing of such a cutoff date are outbalanced by the factor of public reliance on an effective administration of justice, which argues for a prospective application only." 106 R. I. at 61, 256 A.2d at 22.

It is obvious, in our opinion, that justice will best be served by holding that, except as to the plaintiff who ini-

tiated the action in which the overruling occurred, the rule established by such action should apply only to cases arising out of future occurrences. This result is in accord with a substantial line of authority embodying the theory that an overruling decision should be given only prospective operation whenever injustice or hardship due to reliance on the overruled decision would thereby be averted. *Molitor* v. *Kaneland Community Unit District No. 302, supra.* In that case the Illinois court said that there is substantial authority in support of the position that the new rule should be applied to the case in which the old rule was abolished or abrogated. The Illinois court said: "At least two compelling reasons exist for applying the new rule to the instant case while otherwise limiting its application to cases arising in the future. First, if we were to merely announce the new rule without applying it here, such announcement would amount to mere *dictum.* Second, and more important, to refuse to apply the new rule here would deprive appellant of any benefit from his effort and expense in challenging the old rule which we now declare erroneous. Thus there would be no incentive to appeal the upholding of precedent since appellant could not in any event benefit from a reversal invalidating it." 18 Ill.2d at 28, 163 N.E.2d at 97.

While it is, then, our opinion that the doctrine of immunity shall not be applicable in the instant case, we reluctantly conclude that we must deny the request of counsel representing Thomas C. Murphy, as Administrator of the Estate of Michael P. Murphy, Deceased, C. A. No. 69-4369, for similar consideration. It is true that counsel in that case was granted permission to file a brief amicus in the instant case on the issues involved and subsequently filed an excellent and persuasive brief, urging the abolition of the doctrine. In that brief, counsel formally requested that if the doctrine be abolished, his client, as Administrator of the

Estate of Michael P. Murphy, be given the benefit of the law as it stands with the doctrine of immunity abrogated.

Were we to grant this request, we would be encouraging the practice of seeking to intervene as amicus in any case in which some long-established doctrine is challenged. For example, in the instant case it is entirely possible that a substantial number of persons having claims against municipalities which were barred by the doctrine of immunity could have requested and been granted the privilege of filing briefs amicus and now be entitled to the benefits of the rule as it stands with the immunity abolished. This obviously would work considerable hardship on a number of municipalities which would not have prepared to meet the economic demands that would arise out of their being made liable when, in fact, in failing to provide for such economic protection, they had been relying on the rule of law that is now abolished. For this reason we repeat that we reluctantly deny the benefits of this decision to the Administrator of the Estate of Michael P. Murphy.

The appeal of the plaintiff is affirmed, and the judgment appealed from is reversed.

Motion for reargument denied.

*Robert R. Afflick,* for plaintiff.

*Albert L. Frechette, Jr.,* Town Solicitor, for defendant; *Robert J. McOsker,* City Solicitor, *David J. Kehoe,* Assistant City Solicitor, *Edward F. Malloy,* Assistant City Solicitor, on behalf of City of Providence, Amicus Curiae; *Edward Bromage, Jr., Henry M. Swan, Conrad M. Cutliffe,* on behalf of Thomas C. Murphy as Administrator of the Estate of Michael P. Murphy, Amicus Curiae.