277 A.2d 750.

ADVISORY OPINION TO THE SENATE OF THE STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS.

MAY 25, 1971.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

Advisory Opinion requested by Senate, in reference, primarily, to status of certain officers, considered by the Justices and questions propounded are treated in opinion which follows:

May 25, 1971

To the Honorable, the Senate of the
  State of Rhode Island and
    Providence Plantations

We have received from Your Honors a resolution requesting in accordance with the provisions of section 2 of article XII of amendments to the state constitution our written opinion upon the following questions.

"1. Are the provisions of Senate S-365,[1] introduced in the 1971 general assembly session entitled 'An

---

[1]The proposed legislation, S-365, provides that:

"No person appointed to the office of city or town manager or administrator or police chief shall be required to reside or live within such city or town as a condition for appointment to such office."

Act Providing That Cities and Towns May Employ Out-of-State Residents' a violation of any provisions of the Constitution of the United States or the Constitution of the State of Rhode Island?

"2. Are the positions of city or town manager, or administrator, or police chief, civil offices within the meaning of section 1 of Article IX of the Constitution of the State of Rhode Island?"

The first question submitted by Your Honors does not direct our attention to any particular provisions of either the federal or state constitutions which might be impinged upon by the proposed legislation if enacted into law. Instead it asks whether that legislation will violate "any provisions" of those constitutions. For the reasons stated by the justices of this court in *Opinion to the House of Representatives,* 99 R. I. 377, 208 A.2d 126, such a question, failing as it does to point to particular constitutional provisions which may be violated by the proposed enactment, has too broad a sweep to fall within the purview of our constitutional obligation to render advisory opinions. If Your Honors will inform us of the specific constitutional provisions which are giving you concern with respect to the validity of the pending legislation, we will then be better able to give the propounded question the consideration which it deserves and which will be helpful to Your Honors. Until then we must respectfully decline to respond to your first inquiry.

Your Honors also inquire whether the positions of city or town manager or administrator or police chief are "civil offices" within the meaning of article IX, section 1 of the state constitution.[2] Restated, and as we understand it, your question is whether legislation which, if enacted into law, will permit a municipality in this state to appoint a

---

[2]Article IX, section 1, reads as follows:

"No person shall be eligible to any civil office (except the office of school committee), unless he be a qualified elector for such office."

nonresident as its city or town manager or administrator or police chief, will conflict with article IX, section 1. That provision generally makes a person's eligibility to hold "civil office" contingent upon his being a "qualified elector for such office."

We look to article XXIX, section 1, of the amendments to the state constitution for the elements which qualify a person as an elector and, insofar as pertinent to your inquiry, it provides that a "qualified elector" must have "* * * had his residence and home in this state for one year and in the town or city in which he may offer to vote six months next preceding the time of voting * * *."[3] Under that provision the residency requirements for voting in state and local elections differ. For the former all that is required is residency in the state for one year; for the latter a voter, in order to qualify, must in addition have resided and had his home in the particular municipality for six months. When these requirements are read together with article IX, section 1, as they must be, it becomes apparent that in order to be a "qualified elector for such office" the holder of a state civil office must be eligible to vote in a state election, and the holder of a local civil office in a local election.

It is within the context of this background of the relevant constitutional provisions that we discuss what article IX, section 1 means when it speaks of a "civil office," observing at the outset, however, that the eligibility requirement of being a "qualified elector" extends only to the holder of a "civil office" and is inapplicable to those who hold other types of governmental positions.

The term "civil officer" in its broadest sense refers primarily, if not solely, to the holder of either a state or a

---

[3]For a discussion of the standard to be employed to ascertain whether an elector meets the "residence and home" requirement of article XXIX of amendments see In re Opinion of the Justices, 65 R. I. 451, 16 A.2d 331.

municipal office. *State ex rel. Costello* v. *Powers,* 80 R. I. 390, 97 A.2d 584; *Wood* v. *Quimby,* 20 R. I. 482, 488, 40 A. 161, 164. He may be either appointed or elected, *In re Harrington,* 44 R. I. 288, 117 A. 273; customarily he will perform a public or governmental duty; a portion of the sovereignty will be vested or reposed in him and the enforcement of governmental regulations or the control of the general interest of society will be confided to him; and usually he will have tenure, a definite term, general duties as a part of the regular administration of government, the right to emoluments, and will qualify by taking an oath. *State* v. *Crawford,* 17 R. I. 292, 21 A. 546. He differs from a government employee. The latter is in no sense an officer of the government, his term is usually limited in duration, and his duties, instead of being delineated by law, are prescribed by an employment contract which may not be departed from by either party without the assent of the other. *United States* v. *Hartwell,* 73 U. S. 385, 393 (6 Wall.) 18 L. Ed. 830, 832.

To apply these general principles in order to classify the holder of a particular position as either "an officer" or "an employee" necessarily demands an analysis of the nature of that position and a scrutiny of its functions and duties. This is information which the title of the position will not disclose. It is ascertainable only by resort to the legislation creating the position, *Mootz* v. *Belyea,* 60 N.D. 741, 745, 236 N.W. 358, 359, and into what classification the position falls "is to be determined by its original constitution," *State* v. *Crawford, supra* at 294, 21 A. at 547.

Depending upon what a study of that "original constitution" reveals, a city or town manager or administrator will be a "civil officer," if he has tenure and is the city's chief executive and administrative officer, *McClendon* v. *Board of Health,* 141 Ark. 114, 216 S.W. 289; or a mere "employee," if he has neither tenure nor a definite term and

if the charter pursuant to which he was engaged provides that " 'The relationship between the city and the city manager shall be contractual and not that between a municipality and a civil officer.' " *Nugent ex rel. Beck* v. *Leys,* 88 R. I. 446, 455, 149 A.2d 716, 721. See also *Reynolds* v. *Lamb,* 102 R. I. 557, 560-61, 232 A.2d 375, 376-77. Irrespective of which he is, however, he obviously will perform a local, and not a state, function.

The difficulty we face in being completely responsive to the question propounded is obvious. Without being advised concerning the nature of the position of a particular city or town manager or administrator, or of the obligations and responsibilities imposed upon him by the legislation authorizing the office, a determination of whether or not the holder will be a "civil officer" is impossible. Because we have not been furnished with that information, our response to Your Honors with respect to the position of city or town manager or administrator, instead of being specific can only consist of general observations.

If the legislation creating the position makes the manager or administrator an "employee," then clearly the proposed legislation would not impinge upon article IX, section 1, inasmuch as its limiting feature is inapplicable to "an employee." It would be otherwise, however, if the underlying legislation makes him a "civil officer." In that event the office being filled would be a local one and the person selected for appointment would be ineligible unless he satisfied both of the residency requirements of article XXIX, section 1, of amendments, viz., a residence and home in the state for one year and in the municipality for at least six months.

The position of police chief merits special consideration. Except in a rare situation difficult to conceive, the legis-

lation[4] authorizing the position invariably will obligate the incumbent to preserve the public peace and order and to enforce the laws. *Marro* v. *General Treasurer,* 108 R. I. 192, 273 A.2d 660. See also annots., 156 A.L.R. 1356; 84 A.L.R. 309, and he will, therefore, be classified a "civil officer," *Giroux* v. *Murphy,* 88 R. I. 280, 147 A.2d 465; *Eaton v. Town Council,* 52 R. I. 449, 161 A. 225; *Kelley* v. *Cook,* 21 R. I. 29, 41 A. 571, and even if appointed by a municipality under a delegation of authority, he will act for the benefit of all of the inhabitants of the state and will be a state, rather than a local, officer. *Opinion to the Governor,* 22 R. I. 654, 49 A. 36; *City of Newport* v. *Horton,* 22 R. I. 196, 47 A. 312; *Kelley* v. *Cook, supra.*

Status as a state, rather than a local, officer is significant since eligibility to be appointed to a state office will depend upon whether the prospective appointee is qualified to vote in a state election for state officers. To qualify to vote in such an election does not require the voter to have an abode or residence in a particular city or town for any stated period of time, but only a "residence and home in this state for one year."

---

[4]From at least 1889 until 1925 a statute of general application provided that the sheriffs and their deputies, the town sergeants, constables, and the chiefs of police of the several cities and towns should constitute the state police. Collectively they were charged with the duty of seeing to the observance and the enforcement of the laws and of using their utmost efforts to suppress and prevent crime. (P. L. 1889, chapter 816, section 16; G. L. 1909, chapter 123, section 17; G. L. 1923, chapter 128, section 3). In 1925 a separate department of state police was created as an addition to the state police originally constituted in 1889. (See P. L. 1925, chapter 588 and section 16 thereof). In G. L. 1938, chapter 8,. section 17, it is provided that the division of state police is in lieu of the state police as constituted. G. L. 1938, chapter 658, section 12, repealed P. L. 1925, chapter 588. As far as we have been able to ascertain,. the 1956 General Laws contain no provision of general application defining the nature of the office of chief of police and prescribing his duties and functions, and to ascertain the nature of that position in any particular municipality requires reference to the special legislation creating or authorizing the position.

The lack of pertinent information has made it impossible for us to respond directly and completely to your second question. We have, however, provided Your Honors with some observations which we feel might alleviate some of your concerns, as we understand them, with respect to the constitutional validity of the proposed legislation.

THOMAS H. ROBERTS
THOMAS J. PAOLINO
WILLIAM E. POWERS
ALFRED H. JOSLIN
THOMAS F. KELLEHER