374 A.2d 1031.

PLANTATIONS INDUSTRIAL SUPPLY OF RHODE ISLAND *vs.*
WILLIAM F. LEONELLI, *City Treasurer.*

JUNE 29, 1977.

PRESENT: Bevilacqua, C. J., Paolino, Joslin, Kelleher and Doris, JJ.

KELLEHER, J. This civil action, which seeks to enjoin the expenditure of public funds, was commenced in September, 1975. At that time the plaintiff, Plantations Industrial Supply of Rhode Island (Plantations), a Rhode Island nonbusiness corporation, owned real estate in the city of Warwick and paid taxes to that municipality. The case is before us on the plaintiff's appeal from the grant by a Superior Court justice of the defendant's motion to dismiss the complaint because it failed to state a claim upon which relief could be granted.

During the pendency of the appeal, Plantations sold its Warwick property to one Donald G. Crombie. Crombie has

asked that he be substituted as party plaintiff for the purpose of pressing the present appeal. Because this appeal presents an issue in substantial public interest, we will forego any inquiry into the bona fide apects of the sale and allow the substitution of Crombie as plaintiff.

This litigation is but another chapter in an ongoing saga which began on May 18, 1960, when plaintiff's attorney, Aram K. Berberian, was arrested by the Warwick Police Department and charged with behaving in a disorderly manner. The arrest followed a rather unusual chain of events which occurred after Berberian's automobile was tagged because it was parked in a portion of a municipal parking lot which had been posted as being reserved for "Fire Cars Only." Once Berberian observed the tag, he took it to the nearby police station, tossed it on the day sergeant's desk, and left. After Captain Clarence I. Mitchell became aware of what had transpired, he went to the station's main entrance and asked Berberian to return. When Berberian entered the station's entryway, he refused to exhibit his driver's license, and the captain ordered one of his subordinates to bring the attorney into the station.

Berberian made it clear that he had no intention of cooperating in this endeavor. Consequently, an officer approached him, placed one hand on Berberian's arm, and walked him into the squad room. When Berberian entered the squad room, he lay down on the floor. Once Captain Mitchell left the room, Berberian abandoned his passive resistance, ran out of the station, and sought sanctuary in a nearby courthouse. He was apprehended in the chambers of a District Court judge and charged with behaving in a disorderly manner.

A Superior Court jury found that he had indeed behaved in a disorderly manner. However, on appeal this court reversed, holding that the trial justice should have directed

a verdict for defendant.[1] Thereafter, Berberian sued Captain Mitchell for false arrest.[2]

Today, some 17 years after Berberian's squad room lie-down and his dash for sanctuary, he has a judgment against now retired Captain Mitchell for $300 plus costs and interest. The city of Warwick, through its treasurer, has indicated an intent and willingness to pay the judgment but both Plantations and Crombie insist that municipal funds cannot be used to satisfy a judgment that is the personal obligation of one of its officials. We disagree.

Crombie contends that such an expenditure is unlawful and in this regard refers us to the cases of *Miller* v. *Clarke*, 47 R.I. 13, 129 A. 606 (1925), and *Kelley* v. *Cook*, 21 R.I. 29, 41 A. 571 (1898). Both of these cases came at a time in our judicial development when the difference between the governmental and proprietary functions of a municipality was determinative of a municipality's liability for the tortious acts of its agents.[3] This age-old doctrine, if not specifically overruled by our holding in *Becker* v. *Beaudoin*, 106 R.I. 562, 261 A.2d 896 (1970), was finally laid to rest by G.L. 1956 (1969 Reenactment) §9-31-1

---

[1]*State* v. *Berberian*, 93 R. I. 318, 175 A.2d 282 (1961).

[2]*Berberian* v. *Mitchell*, 115 R.I. 149, 341 A.2d 56 (1975); *Berberian* v. *Mitchell*, 113 R. I. 438, 321 A.2d 431 (1974).

[3]The reasoning behind the distinction was that if the officer was performing a governmental or public function, he was not the agent of the municipality but of the state. Accordingly, the municipality could not be held liable for his acts absent an express statutory provision. On the other hand, if the officer was performing a proprietary function for the municipality — one undertaken for the pecuniary advantage of the municipality in its corporate capacity — then the municipality would be liable for his negligent acts or omissions. *See Wroblewski* v. *Clark*, 88 R. I. 235, 146 A.2d 164 (1958); *Miller* v. *Clarke*, 47 R. I. 13, 129 A. 606 (1925); *Kelley* v. *Cook*, 21 R. I. 29, 41 A. 571 (1898).

et seq. Moreover, plaintiff's reliance on *Miller* and *Kelley* is not well-taken for an additional reason.

In both *Miller* and *Kelley* the plaintiff brought his action directly against the city, basing his theory of recovery upon the municipality's liability in the first instance. Here, Berberian has obtained a judgment against the offending officer, not the municipality, but Crombie seeks to enjoin the city's payment of that judgment. Thus, rather than a question of the city's liability, this case concerns the city's right to indemnify[4] its officers for their tortious conduct, and a different rule of law applies. Although there seems to be a diversity of opinion on the question, *see* Annot., 130 A.L.R. 736 (1941), it has been passed upon in this jurisdiction. In *Sherman* v. *Carr,* 8 R.I. 431 (1867), the mayor of Newport was found liable for false imprisonment. The mayor paid the $1,000 judgment out of his own pocket. Thereafter, the city council appropriated funds to reimburse Newport's chief executive, and several taxpayers immediately sought to enjoin the city treasurer from paying the mayor. The court reasoned that if officers could not rely upon the treasury in certain instances, their desire to preserve the peace and order would be considerably diminished, whereas if they were assured of reimbursement, there would be a risk that caution would be thrown to the winds. Accordingly, the court, in taking a middle-of-the-road approach, reached the following conclusion:

> "It would seem, therefore, to be the wisest to leave the indemnification of the officer to the discretion of those who represent the interests of the city, that, on

---

[4]We recognize that this is not a pure case of indemnification in that the officer did not satisfy Berberian's judgment before seeking reimbursement from the city. However, the city's tender of payment to Berberian rather than the officer has the same ultimate effect. and thus we deem the indemnification theory applicable to the facts of this case. *See Sherman* v. *Carr,* 8 R.I. 431 (1867).

the one hand, they should not be without the power to indemnify a meritorious officer, acting in good faith, for the consequences of his conduct, and on the other hand, they should not be obliged to protect every officer, though acting in good faith, under circumstances which seem to them to indicate a blamable want of care and caution." *Sherman* v. *Carr, supra* at 434-35; *accord, Grim* v. *Lee,* 34 R.I. 333, 83 A. 853 (1912).

Thus, in Rhode Island if an officer in the discharge of his public duty in good faith exceeds his authority and thereby becomes liable for damages for his actions, the municipality has the discretion to reimburse him for the legal expenses or a judgment thereby incurred. *See* 3 McQuillan, *Municipal Corporations* §12.137 (3d ed. 1973). Here no one questions Mitchell's good faith as he reacted to a scene that thankfully is not an everyday occurrence at a police station. Indeed, we have no doubt that when authorizing the disputed expenditure, the council in 1974, after conisdering the happenings of May 18, 1960, was convinced of the truth of Gilbert and Sullivan's lament that "[w]hen constabulary duty's to be done, [t]he policeman's lot is not a happy one."[5] It is obvious that Warwick's officialdom decided to ease the lot of Captain Mitchell, and on this record we are not about to fault its choice.

The plaintiff's appeal is denied and dismissed, and the judgment appealed from is affirmed.

*Aram K. Berberian,* for plaintiff.

*Thomas L. McDonald,* Asst. City Solicitor, for defendant.

---

[5]"Pirates of Penzance," Act II.