Alfred TESTA, Manuel daSilva and Tabco, Incorporated, Plaintiffs,

v.

Carl D. WINQUIST, Individually and in his official capacity as Lieutenant, East Providence Police Department, et al., Defendant and Third-Party Plaintiff,

v.

Christine S. MANFREDI, in her capacity as Treasurer of the City of Warwick, Richard Steiner, Individually and in his official capacity as a Warwick Police Officer and Robert Stevenson, in his official capacity as Administrator of the Rhode Island Division National Computer Information Center, Third-Party Defendants.

Civ. A. No. 77-0449.

United States District Court, D. Rhode Island.

May 15, 1978.

Lynette Labinger, of Abedon, Stanzler, Biener, Skolnik & Lipsey, Providence, R. I., for plaintiffs.

Orlando A. Andreoni, City Sol. of E. Providence, East Providence, R. I., Nathaniel J. Rendine, Asst. City Sol., Stephen G. Linder, Providence, for third-party plaintiffs.

J. Peter Doherty, Special Asst. Atty. Gen., Providence, R. I., Thomas L. McDonald, Asst. City Sol., City of Warwick, R. I., for third-party defendants.

## MEMORANDUM AND ORDER

PETTINE, Chief Judge.

Third-party defendants Christine Manfredi, Treasurer of the City of Warwick, and Richard Steiner, a Warwick police

officer, move to dismiss the action brought by third-party plaintiffs Carl D. Winquist, Lieutenant of the East Providence Police Department and other unnamed officers of that department. The issues briefed by the parties have only a superficial simplicity that masks complicated and controversial questions concerning the scope of both jurisdiction and causes of action in federal court. After careful analysis of all the pertinent issues, the Court has decided to deny the motion to dismiss.

The primary action is brought by plaintiffs Alfred Testa, Manuel daSilva and Tabco, Inc. against officers of the East Providence police force (hereinafter "third-party plaintiffs") for alleged deprivations of constitutional rights secured by the fourth, sixth and fourteenth amendments. Plaintiffs pend state law claims for detention in violation of R.I.G.L. sec. 12–7–1, malicious prosecution, false imprisonment, libel and slander, trespass and malicious destruction of property. Among the many violations alleged, plaintiffs charge that third-party plaintiffs unlawfully detained them on the night of January 31, 1977. Although both plaintiffs Testa and daSilva were detained overnight, only plaintiff Testa was charged with possession of a stolen vehicle. This vehicle was in fact lawfully purchased in September, 1975. At the police station, plaintiffs' attorney produced the certificate of title, but, according to the complaint, Lieutenant Winquist refused to make any inquiry into its authenticity. Subsequently, both plaintiffs spent the night in jail and their vehicle was seized.[1]

Third-party plaintiffs filed their complaint claiming, in essence, contribution or indemnification from third-party defend-ants for any liability based on this detention. They allege that, upon observation of suspicious activity at plaintiffs' auto body shop, third-party plaintiffs chased and ultimately stopped plaintiffs in their vehicle. Upon failure to produce proof of ownership, third-party plaintiffs ran a check of the vehicle through the National Computer Information Center (NCIC) which reported the vehicle stolen out of Warwick, Rhode Island. The officers then called Richard Steiner of the Warwick police department who confirmed that the vehicle was stolen and still unrecovered. Allegedly pursuant to this information, third-party plaintiffs charged plaintiff Testa with possession of a stolen vehicle. It appears from both the original and third-party complaints that the vehicle had in fact been previously stolen but had been recovered by the insurance company and subsequently sold to plaintiff Tabco, Inc. Pursuant to Rule 14(a) of the Federal Rules of Civil Procedure, third-party plaintiffs impleaded Robert Stevenson, the administrator of the Rhode Island Division, National Computer Information Center, and Richard Steiner, the Warwick police officer who confirmed the vehicle's status, for negligent failure to keep current and accurate records, upon which information third-party plaintiffs allegedly relied in detaining or arresting plaintiffs. Third-party plaintiffs also sue Christine S. Manfredi, in her representative capacity as Treasurer of the City of Warwick.

Third-party defendants Manfredi and Steiner bring this motion to dismiss, claiming that this Court has no jurisdiction over municipal defendants and that the complaint failed to state a claim on the ground that an intentional tortfeasor (third-party

---

1. The other violations alleged include failure to accord procedural rights to plaintiffs during their detention, communication to both the Providence police and the press that plaintiffs were operating a "hot car ring", Lieutenant Winquist's false affidavit in support of a search of plaintiffs' auto body shop, and the subsequent arrest of plaintiff daSilva without probable cause for possession of stolen license plates. The charges against daSilva were later dismissed and the warrant quashed.

It is not clear from the complaint whether plaintiffs complain that the arrest of plaintiff Testa, detention of both plaintiffs and their car and Lieutenant Winquist's failure to investigate the authenticity of plaintiffs' certificate of title were all unlawful. Third-party plaintiffs have brought their complaint on the assumption that plaintiffs do so complain. For purposes of this motion to dismiss, the Court assumes the same.

plaintiffs) cannot recover against a merely negligent tortfeasor. Third-party plaintiffs opposed, arguing that they impleaded third-party defendants on a purely state law claim that is within this Court's ancillary jurisdiction. Plaintiffs have neither asserted claims against third-party defendants nor filed a response to the motion to dismiss.

I. *Third-party plaintiffs' right to recover against third-party defendants Stevenson and Steiner*

Although not explicit, third-party plaintiffs base their claim on both a right of contribution, secured by R.I.G.L. sec. 10–6–1, *et seq.* (1969), and a right of indemnity, recognized by Rhode Island law, *see, e. g., Helgerson v. Mammoth Mart, Inc.*, 114 R.I. 438, 441–42, 335 A.2d 339, 341–42 (1975). The premise of both these claims is that third-party plaintiffs may be held liable to plaintiffs for wrongdoing that was caused in whole or in part by third-party defendants. Any judgment against third-party plaintiffs should be either shared or borne solely by third-party defendants. Necessarily, without liability to plaintiffs, third-party plaintiffs have no right of recovery against third-party defendants, even though plaintiffs may still have valid claims against third-party defendants.

Because of the circular nature of the parties' liability, the initial focus must be on the circumstances under which third-party plaintiffs could be held liable to plaintiffs. If these circumstances in turn could form the basis for liability against third-party defendants, the motion to dismiss for failure to state a claim must be denied. The motion must be denied unless "it appears beyond doubt that the [third-party] plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957).

 It is well established that a policeman is not liable for a warrantless arrest under sec. 1983 or under the common law tort of false arrest, if the arrest was made in good faith and with probable cause. *Pierson v. Ray*, 386 U.S. 547, 555, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967). To escape liability, the policeman must establish both that he in fact believed he had probable cause and that this belief was reasonable. *Rodriguez v. Ritchey*, 539 F.2d 394, 400–01 (5th Cir. 1976); *Foster v. Zeeko*, 540 F.2d 1310, 1313 (7th Cir. 1976); *Bryan v. Jones,* 530 F.2d 1210, 1213–14 (5th Cir. 1976) (*en banc*); *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 456 F.2d 1339, 1347 (2d Cir. 1972). Typically, the policeman is shielded from liability if the basis for his belief in probable cause was a mistake in fact, provided the mistake was reasonable. Restatement, Second, Torts sec. 121, Comment i (1965). Reasonableness must be judged in the context of the necessity for on-the-spot judgments by the policeman on the street. *Glasson v. City of Louisville*, 518 F.2d 899, 908 (6th Cir. 1975), *cert. denied*, 423 U.S. 930, 96 S.Ct. 280, 46 L.Ed.2d 258. The standard reflects a proper balance between the constitutional guarantee of freedom from unreasonable seizures and protection of public safety by the arrest of those persons suspected of criminal activity.

Applying these principles to the skeletal outline of the facts alleged in the complaints, the reasonableness of third-party plaintiffs' belief in probable cause at several points in time is crucial. The initial detention was allegedly based on the computer check and third-party-defendant Steiner's confirmation. Absent allegations that the typical police practice was to make further inquiries or that these sources were notoriously inaccurate, reliance on this information as a basis for probable cause, particularly in combination with the alleged results of their surveillance and observation of suspicious activities, appears reasonable. Thus, if third-party plaintiffs' allegations of fact are true, they would probably not be liable to plaintiffs for the initial detention and, as a consequence, would have no claim against third-party defendants for contribution or indemnity. Because a cautious approach to factual determinations is appro-

priate when considering a motion to dismiss, without more information, the Court is reluctant to find that, as a matter of law, the reliance was reasonable and dismiss third-party plaintiffs' complaint. Such a determination is more appropriately left to the jury, unless, based on affidavits accompanying a summary judgment motion, it is evident there is no justiciable issue. *E. g., Dupree v. Village of Hempstead*, 401 F.Supp. 1398 (E.D.N.Y.1975).

In addition, the initial detention or arrest is not the only crucial point in time. Plaintiffs claim that third-party plaintiff Winquist failed to make any inquiry into the authenticity of the certificate of title to the vehicle. Assuming the truth of this allegation, it is certainly conceivable that the previously reasonable reliance is stripped of its reasonableness in light of this prima facie evidence of title and the diminished necessity for quick decisions once at the station house. *See Bryan v. Jones*, 530 F.2d at 1215. Thus, third-party plaintiffs could be indeed liable to plaintiffs for illegal arrest following presentation of the certificate of title.

■ Turning now to the intersection of third-party defendants' liability, the Court concludes that the alleged failure to maintain current and accurate records of stolen automobiles by third-party defendants Stevenson and Steiner could be a concurring proximate cause of plaintiffs' detention, along with third-party plaintiffs' unreasonable reliance on the information furnished. Under Rhode Island tort law, a negligent act continues to be a proximate, concurring cause of the injury if the intervening act was a reasonably foreseeable result of the original negligence. *S.M.S. Sales Co. v. New England Motor Freight, Inc.*, 115 R.I. 43, 340 A.2d 1215 (1975). Liability lies even if the intervening cause involved negligence or an intentional tort, provided the inter-

vening act was foreseeable. *Gercy v. United States*, 409 F.Supp. 946, 954 (D.R.I.1976), *aff'd*, 540 F.2d 536 (1st Cir. 1976); W. Prosser, The Law of Torts, sec. 44 at 275 (4th ed. 1971). *See, e. g., Evans v. Liquori*, R.I., 374 A.2d 774, 777 n. 2 (1977) (suicide could be reasonably foreseeable intervening cause of original negligence). Reliance, even unreasonable reliance, on the false information stored in the computer or Warwick police records, could be found by a jury to be a *foreseeable* intervening cause that did not supersede or exempt from liability the original negligent maintenance of these record systems.

■ In Rhode Island, contribution is generally available between joint tortfeasors for negligent acts that are the concurring causes of plaintiff's injury. Third-party defendants urge that contribution is only available to the nonintentional tortfeasor and, thus, third-party plaintiffs charged with false arrest, imprisonment and constitutional wrongs cannot recover against them for their negligent acts. Third-party defendants correctly state the rule in some states which have abrogated the common law prohibition against contribution but still deny the right of contribution to an intentional tortfeasor. *See generally* 18 Am.Jur.2d secs. 33–40 (1965). However, Rhode Island has adopted, without material alteration, the Uniform Contribution Among Tortfeasors Act which contains no such limitation on the right of contribution between joint tortfeasors, nor makes any distinction between negligent or intentional torts.[2] F. Harper & F. James, The Law of Torts, sec. 10.2 at 722 (1956). The moving party has failed to provide any Rhode Island case law suggesting such a narrow interpretation of the Act, nor has this Court found any. Of course, intentional conduct is more likely to constitute a superseding, unforeseeable cause for which the initial

2. The Uniform Contribution Among Tortfeasors Act, adopted in Rhode Island, reads in pertinent part:

Sec. 10–6–2: . . . 'joint tortfeasors' means two (2) or more persons jointly or severally liable in tort for the same injury to

person or property, whether or not judgment has been recovered against all or some of them; . . . . .

Sec. 10–6–3: The right of contribution exists among joint tortfeasors.

negligent tortfeasor is not liable. But there is no reason to institute a hard and fast rule denying contribution to the party who commits an intentional tort such as false arrest and imprisonment.

Even assuming that contribution is unavailable to the tortfeasor who acts with malicious intent or reckless disregard against the merely negligent tortfeasor, the facts of the instant case do not suggest such a discrepancy in culpability between the joint tortfeasors as to deny contribution. The Court has supposed that third-party plaintiffs may be held liable upon a showing of unreasonable reliance on the computer check and on the Warwick police officer's confirmation. Such reliance is not significantly more culpable than the original negligent failure to maintain accurate records. Although the jury may in fact find that third-party plaintiffs engaged in malicious or reckless conduct which, according to third-party defendants' suggested interpretation, would disentitle them to contribution, the jury *could* properly find liability based solely on unreasonable reliance without any finding of malicious or reckless conduct. Therefore, even if this Court adopted third-party defendants' narrow reading of the contribution statute, dismissal would not be appropriate at this stage of the litigation.[3]

---

**3.** This Court's conclusion that police officers could be liable without a showing of malicious or reckless conduct is limited to the instant claims of unreasonable seizure violative of the fourth/fourteenth amendments and state law claims of false arrest and imprisonment. The current controversy over whether negligent conduct can rise to the level of a constitutional tort actionable under sec. 1983 is not relevant to the type of claims presently before this Court. At the same time the Supreme Court warned in *Paul v. Davis* against the fourteenth amendment becoming a general "font of tort law", the Court distinguished § 1983 claims for unreasonable search and seizure which are specifically protected in the Constitution. 424 U.S. 693, 700–01, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976). Pursuant to the admonition in *Paul*, the First and Seventh Circuits have rejected sec. 1983 actions for negligent violation of rights which have no more specific source than the vague contours of the due process clause. *E. g., Downs v. Sawtelle*, 574 F.2d 1, 4 at n. 2 (1st Cir. 1978); *Bonner v. Coughlin*, 545 F.2d 565 (7th Cir. 1976) (*en banc*); *Hoitt v. Vitek*, 497 F.2d 598 (1st Cir. 1974). Yet even these courts have distinguished constitutional torts for false arrest or for violation of established constitutional rights. *See, e. g., Bonner v. Coughlin*, 545 F.2d at n. 8; *Hoitt v. Vitek*, 497 F.2d at 601 n. 3. Moreover, the validity of the First and Seventh Circuits' rejection of sec. 1983 actions for negligence is still an open question that was reserved by the Supreme Court in *Procunier v. Navarette,* 434 U.S. 555, 566 n. 14, 98 S.Ct. 855, 55 L.Ed.2d 24 (1978). *See, Navarette v. Enomoto,* 536 F.2d 277 (9th Cir. 1976); *Culp v. Devlin*, 437 F.Supp. 20 (E.D. Pa.1977) (both cases recognizing § 1983 actions for negligence).
The more appropriate question is not whether the unreasonable arrest and imprisonment here are actionable but whether proof of unreasonable conduct overcomes third-party plaintiffs' immunity. *See Bryan v. Jones*, 530 F.2d at 1213. The Supreme Court has incorporated a reasonableness component in the qualified immunity generally available to official defendants in sec. 1983 suits. The Court wrote in *Scheuer v. Rhodes*:

> in varying scope, a qualified immunity is available to officers of the executive branch of government, the variation being dependent upon the scope of discretion and responsibilities of the office and all the circumstances as they reasonably appeared at the time of the action on which liability is sought to be based. It is the existence of reasonable grounds for the belief formed at the time and in light of all the circumstances, coupled with good-faith belief that affords a basis for qualified immunity of executive officers for acts performed in the course of official conduct. 416 U.S. 232, 247–48, 94 S.Ct. 1683, 1692, 40 L.Ed.2d 90 (1974).

At least when false arrest and imprisonment are concerned, the officer must establish not only that his act was non-malicious, but also the reasonableness of his belief in his legal authority to arrest or imprison the plaintiff. *Rodriguez v. Ritchey*, 539 F.2d at 400–01; *Bryan v. Jones*, 530 F.2d at 1313; *Foster v. Zeeko*, 540 F.2d at 1313; *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 456 F.2d at 1347. For example, in *Bryan v. Jones*, a case similar to the one at bar, the Fifth Circuit suggested that the defendant sheriff will fail to establish his reasonable good faith in the lawfulness of a detention if the jury finds that he unreasonably relied on inaccurate records or negligently established an inaccurate record-keeping system. In the instant action, third-party plaintiffs will be subject to a verdict of liability for unreasonable reliance on third-party defendants' information.
Since neither complaint mentions that third-party plaintiffs obtained an arrest warrant, the

■ Though the parties have not raised the following ground for dismissal, the Court deems it worthy of discussion since it directly affects third-party plaintiffs' right to contribution. The right of contribution is premised not only on third-party plaintiffs' potential liability to plaintiffs, but also third-party defendants'. If third-party defendants owed no duty to plaintiffs, then they are not "jointly or severally liable in tort for the same injury" and cannot be required to contribute, R.I.G.L. sec. 10–6–2. However, the Court today concludes that both third-party defendants Stevenson and Steiner had a duty to maintain reasonably accurate and current record systems. Mr. Stevenson, administrator of the Rhode Island Division of the National Computer Information Center, had a duty to establish reasonable administrative mechanisms designed to minimize the risk of inaccuracy by requiring that the records be constantly updated. A similar duty with respect to the maintenance of individual criminal record history information has been established by statute, 42 U.S.C. sec. 3771 (1973) and regulations, 28 C.F.R. sec. 20.20 *et seq.* These measures reflect a growing consciousness of the new dangers to personal liberty that "the accumulation of vast amounts of personal information in computerized data banks or other massive government files" presents. *Whalen v. Roe,* 429 U.S. 589, 605, 97 S.Ct. 869, 879, 51 L.Ed.2d 64 (1977). The right to be free of unreasonable seizures, constitutionally established since the beginning of our nation, is directly threatened by the careless use or abuse of this new technology. Legal protections must likewise be modernized to meet the new threats. It is now commonplace for the arresting officer to rely on the computer check of the present status of an automobile reported stolen. If the arresting officer is not liable to the arrestee for a false or unconstitutional arrest because his reliance

is reasonable, the arrestee's only recourse must be against those in control of the information system that resulted in the unwarranted denial of liberty.

Consistent with the realities of modern day law enforcement, the Fifth Circuit, while granting dismissal against the arresting officer, permitted the arrestee's action to go forward against the federal officer whose misinformation, developed during his investigation, was materially relied upon by the grand jury returning the indictment. *Rodriguez v. Ritchey,* 539 F.2d at 402–04. Although in this case the plaintiffs have not sought relief against the third-party defendants, that fact does not abrogate third-party plaintiffs' right to contribution which is presently before us. The Fifth Circuit has also recognized the duty of a sheriff to keep accurate records so as to avoid unlawfully imprisoning the plaintiff, *Bryan v. Jones,* 530 F.2d at 1215 (Court's opinion), 1216 (Brown, C. J., specially concurring), 1218 (Wisdom, J., concurring in part, dissenting in part). The Circuit Court for the District of Columbia suggested both constitutional and common law dimensions to the protection against inaccurate arrest records, *Tarleton v. Saxbe,* 165 U.S.App.D.C. 293, 507 F.2d 1116 (1974). The Court wrote:

In the largest sense, both this constitutional issue and the common law principle forbidding defamation of innocent individuals refer to the value of individual privacy. This value, consistently reaffirmed in recent years, serves to insulate individuals from unjustifiable government interference with their private lives. This value finds its most direct expression in the Fourth and Fifth Amendments; it also is reflected in certain aspects of the First Amendment: government collection and dissemination of inaccurate criminal information without reasonable precautions to ensure accuracy could induce a levelling conformi-

First Circuit's requirement of malice to establish liability for arrests pursuant to a warrant in *Madison v. Manter,* 441 F.2d 537 (1971) is inapplicable. Justifying the malice standard, the Court reasoned that adequate protection of the arrestee will not be sacrificed since a neu-

tral magistrate will screen the grounds for probable cause before issuing the arrest warrant. The magistrate's protection is not available in a warrantless arrest. Thus, the officer making a warrantless arrest must be held to an objective reasonableness standard.

ty inconsistent with the diversity of ideas and manners which has traditionally characterized our national life and found legal protection in the First Amendment. *Id.* at 301, 507 F.2d at 1124 [footnotes omitted].

While the Federal Bureau of Investigation also had a duty to ensure accuracy, the Court in *Tarleton* suggested that the primary responsibility for accuracy was imposed at the state and local level since these agencies were in a better position to verify the information. *Id.* at 304, 507 F.2d at 1127. Similarly, the arresting officer is not in a position to establish the administrative mechanisms that will prevent false arrests based on inaccurate computer checks. The duty to minimize inaccuracies is imposed on the official in control of the system—in this case, third-party defendant Stevenson.

The arresting officer is also not in as good a position as the police department which initially reported the vehicle stolen and where the vehicle was registered to update the status of the vehicle. Particularly since the crime involves an item quintessentially mobile, the primary duty to keep track of the vehicle must fall to the police department that covers the area where the vehicle was registered. Thus, Officer Steiner and his department had the duty to maintain current, accurate records of the previously stolen vehicle.[4]

When breach of this duty to maintain accurate records results in a false or unconstitutional arrest actionable under both Rhode Island and federal law, the arrestee has a cause of action against those who breached this duty. *Compare with Paul v. Davis*, 424 U.S. at 709, 96 S.Ct. 1155 (no arrest or alteration of status resulted from alleged violation, defamation without more insufficient to give rise to a constitutional tort); *Hammons v. Scott*, 423 F.Supp. 625 (N.D.Cal.1976). Since the injured party has a cause of action against third-party defendants, third-party plaintiffs have a right

to contribution against third-party defendants, should third-party plaintiffs ultimately be found liable to plaintiffs. *Compare Zarrella v. Miller*, 100 R.I. 545, 217 A.2d 673 (1966) *with Cacchillo v. H. Leach Machinery Co.*, 111 R.I. 593, 305 A.2d 541 (1973).

▇▇▇ Key similarities and distinctions from the common law action for false arrest support this Court's conclusion that third-party defendants' conduct is actionable. The arrestee generally has a claim not only against those who physically arrested him but also against those who actively brought about the arrest. Generally, no liability attaches to merely giving false information which the authorities choose to rely upon as the basis for the arrest. W. Prosser, The Law of Torts sec. 11 at 47 (4th ed. 1971). In Rhode Island, a private individual is only liable for knowingly giving false information to the police. *Powers v. Carvalho*, R.I., 368 A.2d 1242, 1248 (1977). The interest in "efficient enforcement of the criminal law" which counsels against extending liability to the good faith private informer, *id.*, counsels in favor of extending liability here when the state and local law enforcement agencies allegedly fail to establish mechanisms for ensuring accurate records. The special expertise, position of control over systems of information, and public trust that law enforcement agencies possess, justify holding them to a higher standard of accuracy than that applicable to the private individual.

II. *Ancillary Jurisdiction over third-party defendant Manfredi, the Treasurer of the City of Warwick.*

▇▇▇ Since the Rhode Island Supreme Court abrogated the doctrine of municipal immunity, *Becker v. Beaudoin*, 106 R.I. 562, 261 A.2d 896 (1970), municipalities can now be sued in Rhode Island courts for the torts of their agents or servants. For example, in *Becker*, the Town of Coventry was sued for the wrongful death allegedly caused by

---

4. It is not clear from the third-party complaint what position Officer Steiner occupies with regard to the Warwick police records. It is also unclear from the papers filed to date whether Officer Steiner inaccurately reported accurate data in the file or whether he accurately reported inaccurate data. The answers to these questions could determine whether Officer Steiner is the proper third-party defendant and whether he should prevail on a summary judgment motion.

the negligence of one of the town's police officers. Pursuant to R.I.G.L. sec. 45–15–5 (1969), suit is maintained against the city treasurer in his or her representative capacity. Clearly, third-party plaintiffs could maintain their contribution claim against the City of Warwick in the state courts of Rhode Island.

 However, the original plaintiffs chose not to sue in state court but instead maintain the instant sec. 1983 action in federal court. Plaintiffs could not maintain a sec. 1983 suit directly against a municipality. The municipality is not a "person" subject to a sec. 1983 action. *City of Kenosha v. Bruno,* 412 U.S. 507, 93 S.Ct. 2222, 37 L.Ed.2d 109 (1973); *Monroe v. Pape,* 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961).[5] In addition, the fact that Rhode Island has abrogated municipal immunity does not permit suit by plaintiffs under sec. 1983. *Moor v. County of Alameda,* 411 U.S. 693, 93 S.Ct. 1785, 36 L.Ed.2d 596 (1973). Lastly and most significantly for purposes of this decision, the Court has also prohibited pending a state law claim against a municipality to a sec. 1983 action. *Aldinger v. Howard,* 427 U.S. 1, 96 S.Ct. 2413, 49 L.Ed.2d 276 (1976). Unlike the typical pendent jurisdiction claim, pending the state law claim against the municipality extends jurisdiction to a party as well as a type of claim that the federal court would not otherwise have jurisdiction over.

 However, *Aldinger* decided only that the sec. 1983 *plaintiff* could not imp-

lead a new party under a state law claim. The Court eschewed an absolute rule, stating that "other alignments of parties and claims might call for a different result". *Id.* at 18, 96 S.Ct. at 2422. Involved in the instant case is not the "pendent party" jurisdiction rejected in *Aldinger* but the court's ancillary jurisdiction, which the *Aldinger* court specifically distinguished. *Id.* at 13, 96 S.Ct. 2413. Defendants in the main action (third-party plaintiffs), not the original plaintiffs, implead the City of Warwick under Rule 14(a). *Compare with Glus v. G. C. Murphy Co.,* 562 F.2d 880, 887 (3d Cir. 1977). It is literally hornbook law that the court's ancillary jurisdiction over a third-party claim requires no independent basis of jurisdiction provided that the federal court has federal question or diversity jurisdiction over the main claim. C. Wright, Law of Federal Courts, sec. 76 at 336 (1970). By definition, ancillary jurisdiction in this context contemplates impleading a party over whom the federal court would otherwise have no jurisdiction. The reason for the distinction in treatment of plaintiff's right to implead a municipal defendant and defendant's rests on the fact that plaintiff chose the federal forum while defendant, who was forced into federal court, should not have to bear the expense of a separate lawsuit in state court. *See Fawvor v. Texaco, Inc.,* 546 F.2d 636, 642–43 (5th Cir. 1977). Therefore, the Court holds that third-party plaintiffs can maintain their action against City Treasurer Manfredi.[6]

---

**5.** This opinion was issued prior to *Monell v. Department of Social Services of City of New York,* —— U.S. ——, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), which held that municipalities can be sued directly under § 1983, excepting liability based solely on respondeat superior. Whether, in light of *Monell,* the city could be sued directly under § 1983 by either original or third-party plaintiffs need not be reached since this Court has ancillary jurisdiction over the third-party action and plaintiffs have not sued the city.

**6.** Since plaintiffs have not asserted any claims against the City of Warwick, the Court need not decide today whether such claims are maintainable. The Court merely notes, without opinion, that the majority rule favors prohibit-

ing a plaintiff's claim against a third-party defendant absent an independent basis of jurisdiction for the claim primarily because of the danger of collusion between plaintiff and the original defendant. *E. g., Ayala v. United States,* 550 F.2d 1196 (9th Cir. 1977); *Fawvor v. Texaco, Inc.,* 546 F.2d at n. 7 (cases cited therein).

As a final note, the fact that plaintiffs could not initially sue the City of Warwick in federal court does not undermine third-party plaintiffs' right of contribution against the City. As discussed *supra,* in order for third-party plaintiffs to have a right of contribution against third-party defendants, plaintiffs must have a cause of action against third-party defendants. Plaintiffs do have a cause of action against the City

Third-party defendants' motion to dismiss is denied.

at least based on the state law claims but that action cannot be brought directly in federal court. When the cause of action exists but, for reasons of limited jurisdiction, that action cannot be maintained in a particular court, Rhode Island law would nonetheless view the third-party defendants as joint tortfeasors "liable in tort" for the same injury to the plaintiffs and, therefore, subject to third-party plaintiffs' right of contribution. R.I.G.L. sec. 10–6–2. This distinction between the existence of a cause of action and the enforcement thereof was first articulated by the Rhode Island Supreme Court to support the claim for contribution against third-party defendant husband by third-party plaintiff for injuries suffered by plaintiff wife, even though the wife could not directly sue her husband because of Rhode Island's inter-spousal immunity. *Zarrella v. Miller,* 100 R.I. 545, 217 A.2d 673, 675–76 (1966). The distinction has equal applicability here.

Although permitting the claim against the City may to some degree frustrate whatever federalism policy Congress may have intended by excluding cities from sec. 1983 actions, *see Kostka v. Hogg,* 560 F.2d 37, 42–44 (1st Cir. 1977), to refuse the contribution claim unfairly burdens the original defendant and Rhode Island's policies in favor of municipal liability, *Becker v. Beaudoin,* 106 R.I. 562, 261 A.2d 896 (1970), and contribution. When plaintiffs have a choice of which tortfeasor to sue, depending on whether they sue in state or federal court, the primary purpose of contribution—to avoid "the arbitrary, collusive or fortuitous choice of defendants"—would be defeated by a dismissal of third-party plaintiffs' contribution claim against the City. *See Cacchillo v. H. Leach Machinery Co.,* 111 R.I. at 597, 305 A.2d 541.