DECISION
The court, sitting without a jury, heard this action brought by Michael Dubois (plaintiff) against the State of Rhode Island Department of Corrections (defendant) alleging negligence and false imprisonment.
Facts and Travel
On March 2, 1990, the plaintiff was convicted of larceny and attempted breaking and entering. The court sentenced plaintiff to two concurrent sentences of eight years. The court ordered the plaintiff to serve the first two and one-half years, and suspended the remaining five and one-half years with probation. The court calculated plaintiff's time from July 25, 1989 and initially scheduled his release for January 25, 1992. With credit for good time, the court calculated his release date to be July 1, 1991.
In accordance with the Rhode Island Parole Guidelines, plaintiff became eligible for parole on May 25, 1990, after serving one-third of his sentence. The evidence before this court indicates that the parole board did not consider the plaintiff for parole in May, 1990. Rather, the parole board first investigated plaintiff's parole eligibility upon plaintiff's request in 1991. The plaintiff declined a parole hearing that the parole board offered to him in May, 1991. Plaintiff was released from incarceration on July 1, 1991.
On August 28, 1991, plaintiff filed the within action alleging that the Department of Corrections breached its duty to notify the parole board of his eligibility for parole. The plaintiff specifically contends that the defendant's failure to notify the parole board of his eligibility date entitles him to damages for negligence and false imprisonment.
The defendant argues that the plaintiff is not entitled to damages. First, defendant contends that plaintiff has neither a liberty nor a property interest in parole and consequently, is not entitled to damages. Second, defendant argues that plaintiff cannot seek a damage award for a discretionary privilege. Furthermore, defendant avers that a judicial appropriation of damages violates the constitutional doctrine of separation of powers. Finally, the defendant maintains that the plaintiff has not met his burden of proving all elements of a false imprisonment claim.
Duty
It is well-settled that in order to maintain an action in tort for negligence and to impose liability, the defendant must breach a duty owed to the plaintiff. Ryan v. State of RhodeIsland, Department of Transportation, et al., 420 A.2d 841 (R.I. 1980). The determination of whether the defendant owed a duty of care to the plaintiff constitutes a question of law that is directed to the sound judgment of the court. Mignone v.Fieldcrest Mills, 556 A.2d 35, 37 (R.I. 1989). The Rhode Island Supreme Court acknowledges that no "clear-cut rule" exists to determine whether the defendant owes a duty in a particular case.Banks v. Bowen's Landing Corp., 522 A.2d 1222 (R.I. 1987). However, this court is mindful of the factors set forth in Banks,
which guide the determination of whether a duty of care exists in a given case. A court may consider some of the following factors:
 "(1) the foreseeability of harm to the plaintiff,
 (2) the degree of certainty that the plaintiff suffered an injury
 (3) the closeness of connection between the defendant's conduct and the injury suffered,
 (4) the policy of preventing future harm, and
 (5) the extent of the burden to the defendant and the consequences to the community for imposing a duty to exercise care with resulting liability for breach." Id. at 1225.
Statutory law, departmental regulations, and caselaw evidence that the defendant owed a duty to the plaintiff in this case. First, defendant had a statutory duty to promptly provide a list of prisoners eligible for parole to the parole board. G.L. §13-8-23 states in pertinent part:
 "The assistant director of adult services, who shall submit a list of all prisoners under his or her control who will be eligible for parole in a given month, not later than the tenth day of the second month preceding. That list shall identify the prisoner by name, offense, and date of commitment."
Furthermore, the Department of Corrections has promulgated Parole Board Guidelines, the purpose of which, ". . . is to provide guidelines for assuring that all inmates eligible for paroleshall be scheduled for parole hearing when first legally eligibleand on a regularly scheduled basis thereafter." 1 CRIR 3, Administrative Policy Statement, 06 110 002 at 001 (emphasis added). The defendant established the following procedure:
 "4. Parole Procedure: The following procedures will be initiated as soon as inmate first becomes eligible for parole consideration:
 A. Within the first seven (7) days of each month and three (3) months in advance of the scheduled parole hearing, a list of all new eligible inmates shall be compiled by the Records and Identification office.
 1. The contact person in the Records and Identification Office shall be the Principal Clerk or a designee.
 B. The Records and Identification office shall type all the pertinent data on the "Application for Parole" for each eligible inmate . . .
 D. The Records and Identification Office shall send the original applications to the Parole Board no later than the tenth day of the month — two (2) months prior to the Parole Board meeting (Compliance with Rhode Island statute). . ." 1 CRIR 3, Administrative Policy Statement, 06 110 002 at 001-003 (emphasis added).
In addition to the defendant's statutory duty, Rhode Island courts impose a special duty of care upon recordkeepers of governmental criminal records. Testa v. Winquist, 451 F. Supp. 388, (D.R.I. 1978).
Notwithstanding defendant's duty under the applicable statute, departmental regulations, and controlling caselaw, defendant contends that it owes no duty to the plaintiff because plaintiff has no liberty or property interest in parole that elevates the discretionary privilege of parole to a constitutional right. This court finds defendant's argument without merit. In State v. Ouimette, 117 R.I. 361, 367 A.2d 704
(1976), the controlling case in Rhode Island for determining when a prisoner is entitled to due process in the parole context, the defendant relies upon a traditional view of due process in the parole context, which defines parole as a privilege, rather than as a vested right. The Ouimette court abandons that traditional view in favor of a balancing test. The Ouimette test for determining due process for prospective parolees requires balancing the interests of prisoners, the state and society in the parole process. Id.[1]
Applying the Ouimette test to the case at bar, this court is satisfied that a balance of all relevant interests, particularly the state's interest in preventing unnecessarily prolonged imprisonment, avoiding arbitrary decisions and insuring fairness to all, coupled with the plaintiff's "very great interest" in parole, warrants the imposition of a duty upon the defendant to inform the parole board of plaintiff's eligibility for parole in order to satisfy minimum standards of due process.
Breach of Duty
The determination of whether the defendant has breached its duty of care constitutes a question of fact for the fact-finder.Mignone, 556 A.2d at 37. Uncontroverted evidence offered at trial indicates that the defendant breached its statutory duty to the plaintiff. First, sworn testimony, in the form of a deposition, from Kenneth Walker, chairman of the Rhode Island Parole Board, indicated that it was, in fact, the defendant's duty to provide plaintiff's name to the parole board in May, 1990, the month he became eligible for parole. "The only way the [Parole] Board can possibly know of a person [eligible]. . .for the first time on that sentence is to be informed of that by the Department of Corrections." Deposition Tr. at p. 8. Mr. Walker further testified that as of April, 1991, his investigation revealed that the plaintiff had never had a parole hearing. Walker Deposition at p. 17. Second, the April 24, 1991 Institutional Adjustment Employment Report from Plaintiff's Supervisor, J. Donley, at the ACI indicates "It appears that Michael Dubois should have been seen [by the parole board] in May of 1990. I would suggest that he be paroled forthwith. He is never a problem." Finally, plaintiff's own testimony reveals that he was never advised of his parole eligibility until 1991. From this uncontroverted evidence of record, this court finds that the defendant breached its duty to the plaintiff.
Immunity
The defendant also argues that the plaintiff is precluded from pursuing his claim because the defendant is part of the executive branch of the government. The defendant's reliance upon this argument is misplaced.
The Legislature, in enacting The Rhode Island Tort Claims Act, G.L. 1956 § 9-31-1, sharply reduced the traditionally broad notion of sovereign immunity. The Rhode Island Supreme Court interpreted the Rhode Island Tort Claims Act in Calhoun v.City of Providence, 120 R.I. 619, 390 A.2d 350 (1978). In order to determine whether sovereign immunity bars a plaintiff's claim, a court must weigh "the injured party's demand for justice against the state's equally valid claim to exercise certain powers for the good of all without burdensome encumbrances and disruptive forces." Id. at 355 . The underlying purpose of the Act, out of which the public duty doctrine evolved, is "to provide effective relief for persons injured as a result of governmental negligence." Catone v. Medberry, 555 A.2d 328, 333 (R.I. 1989).
"The public duty doctrine shields the state and its political subdivisions from tort liability arising out of discretionary governmental actions that by their nature are not ordinarily performed by private persons." DeFusco. et al v. Todesca Forte,Inc., et al, C.A. 95-329, October 21, 1996 citing Haley v. Townof Lincoln, 611 A.2d 845, 849 (R.I. 1992). Rhode Island recognizes three exceptions to the state's general immunity from liability. Liability will attach where (1) the allegedly negligent activities are normally performed by private citizens,Misurelli v. State Department of Transportation, 590 A.2d 877
(R.I. 1991); (2) the state participates in egregious conduct,Boland v. Town of Tiverton, et al. 670 A.2d 1245 (R.I. 1996); or (3) the state owes a special duty to an identifiable plaintiff. Id.
In the case at bar, the state is not protected from liability by the public duty doctrine. The public duty doctrine is intended to protect only those discretionary government functions which cannot be the subject of tort claims because important societal interests are at stake. Calhoun at 390. In identifying important societal interests that justify immunity from liability, the Rhode Island Supreme Court has recognized this state's interest in leaving officials free to exercise their judgment "with independence and without fear of consequences." Id. For example, with respect to judicial immunity, the state holds judges immune from tort liability for decisions because the state has an interest in promoting "principled and fearless decision-making" rather than "intimidation" which would result from the possibility of liability. Id.
Despite this protection accorded to discretionary activities of governmental officials, this jurisdiction does not extend such protection to mere administrative or ministerial governmental functions. Testa v. Winquist, 451 F. Supp. 388 (D.R.I. 1978). InTesta, the court did not shield a recordkeeper of law enforcement records from liability when an error in the recordkeeping for an individual's criminal record led to that person's imprisonment. The court held that the administrator of the computer information center had a duty to maintain records, and further that "the duty to minimize inaccuracies is imposed on the official in control of the system." Id. at 395. In fact, the court held that law enforcement recordkeepers, in particular, are held to a higher standard of accuracy than private individuals. Furthermore, the court held that an individual harmed by the inaccurate records may maintain a tort action against those who breached the duty.Id.
The governmental activity in this case is the act of providing the parole board with the plaintiff's name upon his eligibility for parole. This duty does not involve any discretionary judgment on the part of the Records and Identification Office of the Department of Corrections. Rather, the facts closely resemble those in Testa and warrant classifying the government's action as a purely ministerial or administrative function. While this court recognizes that the state's interest in promoting "fearless decision making" is implicated at the parole release proceedings, where the board is exercising its discretion, those considerations are not implicated in this case. Rather, the state's prevailing interests in avoiding arbitrary decisionmaking, in promoting fairness to all, and in encouraging accuracy in governmental criminal record-keeping, warrant the imposition of liability in this case for the actions of the Records and Identification Office of the Department of Corrections.
After careful consideration of all of the policy considerations that are implicated in this matter, this court is satisfied that, on balance, the acts of the individual in the Records Office of the Department of Corrections are not immune from liability under either the public duty doctrine or under the sovereign immunity doctrine.
Causation
In order to meet plaintiff's burden of establishing causation in a negligence action, a plaintiff must prove that the defendant's negligence was the proximate cause of plaintiff's harm. To show proximate cause a plaintiff must prove that its injury would not have occurred but for the defendant's negligence. Fondedile, S.A. v. C.E. Maguire, Inc., 610 A.2d 87, 95 (R.I. 1992), (quoting Schenck v. Roger Williams GeneralHospital, 119 R.I. 510, 382 A.2d 514 (1977)). This causal connection between negligence and injury must be established by competent proof and cannot be based on conjecture or speculation.Fondedile, 610 A.2d at 95, quoting Evans v. Liguori,118 R.I. 389, 374 A.2d 774 (1977). Accordingly, the plaintiff in this case may not recover unless he proves that but for the defendant's failure to inform the parole board of his parole eligibility, plaintiff would not have remained in prison.
The plaintiff offered no testimony that he definitely would have been released in May, 1990 but for the defendant's failure to advise the parole board of his parole eligibility. Although the plaintiff provided evidence regarding the factors that the parole board considers when considering parole release, Kenneth Walker, Chairman of the Parole Board, testified that he could not determine when the plaintiff most likely would have been released on parole. Deposition Tr. at pp. 22, 23. He also indicated that the rapport between the prospective parolee and the board at a particular hearing was instrumental in determining a person's readiness for parole. Deposition Tr. at p. 23. The plaintiff, himself, testified that no one on the parole board ever indicated to him that he would be paroled, nor did anyone at the prison ever tell him he would automatically be paroled at any hearing. Finally, uncontroverted evidence at trial indicates that the plaintiff refused a parole release hearing that was offered to him in May, 1991. Accordingly, this court finds that the plaintiff has failed to meet his burden relative to causation.
Damages
Assuming, arguendo, that plaintiff had established causation, it is well-settled that the plaintiff in a negligence action also bears the burden of proving damages by a fair preponderance of the evidence. Tom Shaw Inc, v. Derecktor, 639 F. Supp. 1064
(D.R.I. 1986). In Rhode Island, an award of damages must rest upon "legally competent evidence" which establishes the nature and extent thereof and may not rest upon speculation and conjecture. White v. LeClerc, 444 A.2d 847, (R.I. 1982).
In the case at bar, this court finds that the plaintiff has failed to establish his damages. Plaintiff claims damages in the amount of minimum wages for each day incarcerated after his parole eligibility date in May, 1990. The evidence at trial revealed that, through work release, plaintiff was employed by New Pro from July, 1990 until the time of his release, in July, 1991, and that he was earning six dollars per hour while employed at NewPro. He continued his employment at New Pro for one month after his release, at which time he had an argument with his employer and left. The plaintiff bases his damage claim on a possible opportunity to work at Sprague Industries during 1990 or 1991. However, he testified that he was "not sure" of his position at Sprague if hired, that no one ever told him that he would earn more than six dollars an hour if he worked at Sprague Industries, that no one from Sprague ever discussed a forty or fifty hour a week job. Finally, plaintiff testified that he was denied employment at Sprague Industries in August, 1991. Further evidence indicates that he was unemployed from August, 1991 through December, 1991. Testimony relative to plaintiff's work history revealed that he had difficulty maintaining employment, that he was fired for lack of production from one job, and that he had alcohol problems that prevented him from working. From the evidence before it, this court finds that the plaintiff has not proven by a fair preponderance of the evidence that he would have been employed at Sprague Industries from May, 1990 to July, 1991. Furthermore, this court finds that the evidence to support plaintiff's claim that he would have earned more at Sprague than at New Pro is based upon speculation and conjecture.
False Imprisonment
Additionally, the plaintiff alleges that the defendant's failure to inform the parole board of his parole eligibility amounts to false imprisonment. The defendant argues that the plaintiff has failed to establish all of the elements of this action. This court agrees with the defendant.
To establish a cause of action for false imprisonment in Rhode Island, the plaintiff must show that (1) the defendant intended to confine him; (2) the plaintiff was conscious of the confinement; (3) the plaintiff did not consent to the confinement; and (4) the confinement was not otherwise privileged. Moody v. McElroy, 513 A.2d 5, 7 (R.I. 1986). In elaborating upon the privilege element, the Rhode Island Supreme Court has held that where a detention of an individual is authorized by law, it will not constitute the basis of false imprisonment action. Mailey v. DePasquale's Estate, 177 A.2d 376,94 R.I. 31 (1962).
In the case at bar, plaintiff has failed to establish, by a preponderance of the evidence, that his confinement was not privileged or authorized by law. The plaintiff failed to prove that he definitely would have been released in May, 1990 but for defendant's failure to advise the parole board of his parole eligibility. Based upon the Walker testimony cited on pages 12-13 of this decision, plaintiff's claim is without merit. Given that the plaintiff did not demonstrate the likelihood of his parole release in May, 1990, the reason for his imprisonment remains a lawful Judgment and Conviction to the Adult Correctional Institution. This court is satisfied that said conviction constitutes legal authority for plaintiff's confinement until July, 1991 and renders invalid his claim for false imprisonment.
Conclusion
After considering all of the evidence and testimony before it, this court finds that the plaintiff has failed to prove his false imprisonment claim. With respect to the negligence claim, this court finds that although the defendant owed the plaintiff a duty to notify the parole board of his eligibility for parole, plaintiff has failed to satisfy the other elements necessary to sustain his claim.
Counsel is directed to submit the appropriate judgment for entry.
[1] In applying that test, the Ouimette court identified a prisoner's interest in parole as more than a "mere hope." Specifically, the court found that prisoners have "a very great interest in parole proceedings, since, at least statistically, [a prisoner] has a better than 50-50 chance of being paroled . . ." Id. at 708. The court also identified several state or societal interests in parole. For example, the state has interests in both restoring former lawbreakers to useful positions in society and in preventing the undesirable result of "prolong[ing] imprisonment unnecessarily." Id. Both the state and prospective parolees have "an interest in seeing that fair determinations are made, [and] avoiding arbitrary decision-making." The Court held that, on balance, "some degree of minimal due process is both necessary and desirable in parole release proceedings to insure fairness to all." Id.